## S13A1233. REDDING v. THE STATE.

(749 SE2d 717)

NAHMIAS, Justice.

Appellant Jonathan Redding was convicted of felony murder, participation in criminal street gang activity, and other crimes arising from a series of gang-related armed robberies.[1] On appeal, he contends that the trial court erred in instructing the jury. Finding no reversible error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. Appellant was a member of the "30 Deep" street gang and a subset of that gang called "Da Robbing Crew," or "DRC," that conducted robberies and other crimes in Atlanta from 2007 to 2009, primarily in the Mechanicsville and Pittsburgh neighborhoods.

On the night of December 21, 2008, Appellant and other gang members drove in a stolen Jeep Cherokee to a bar and restaurant near downtown Atlanta called "The Standard." Appellant and an associate entered the bar and walked around, looking for flat-screen televisions that they could steal later. As they were leaving, Appellant noticed that bartender Robin McMillan was cashing out, so the gang members waited in the Jeep for McMillan to exit the bar and walk to his car. When McMillan did so, they blocked his car in with the Jeep, and when McMillan asked them to move, Appellant got out of the Jeep, brandished a stolen 9mm handgun, and demanded money. McMillan complied, but Appellant fired at him anyway, missing his head by just a few inches, before leaving in the Jeep. The police recovered a 9mm bullet from the scene. McMillan would later identify Appellant in a photographic lineup as the man who shot at him outside The Standard.

In the early morning hours of January 7, 2009, Appellant and other gang members returned to The Standard to steal flat-screen televisions. A bar employee, John Henderson, was in the public area, while another employee, Ashley Elder, was in the back office. Elder

[1] On May 22, 2009, Appellant was indicted in Fulton County on 24 counts. After a trial that lasted from March 7-14, 2011, the jury found Appellant guilty of felony murder, participation in criminal street gang activity, three counts of armed robbery, attempted armed robbery, two counts of burglary, four counts of aggravated assault, two counts of false imprisonment, and four counts of possession of a firearm during the commission of a felony; the trial court directed verdicts of acquittal on the other six counts. Two of the armed robbery convictions merged into the felony murder conviction, and the attempted armed robbery conviction merged into one of the convictions for aggravated assault. The trial court sentenced Appellant to serve life in prison for felony murder and terms of years in prison for the remaining convictions. On April 8, 2011, Appellant filed a motion for new trial, which he amended on July 2, 2012. The trial court denied the motion on December 18, 2012. Appellant filed a timely appeal, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

had left her purse on the bar counter with her Glock handgun inside. The gang members smashed the front window of the bar with a rock and climbed through. Appellant held Henderson at gunpoint with the same 9mm handgun that he had used to shoot at McMillan 17 days earlier. Appellant demanded money, but Henderson insisted that he did not have any. Appellant then shot Henderson in the leg and dragged him to the back office, where he found Elder hiding. Elder gave the assailants the money from The Standard's petty cash box. The assailants closed the door to the office, leaving Henderson and Elder inside, with Henderson positioned directly next to the door. The gang members then opened fire through the door with the 9mm handgun and the Glock from Elder's purse. A bullet from the Glock struck Henderson in the head, killing him. After the gang members fled, Elder called 911. Forensic experts later matched bullets and casings recovered at the scene to the stolen 9mm and Elder's Glock.

Two days later, on January 9, 2009, Appellant and fellow gang members attempted to rob Eddie Pugh, a small-time marijuana dealer who also ran a gambling operation. Shortly before midnight, one of Pugh's neighbors called him to let him know that men in ski masks were approaching his apartment. When Pugh stepped out of the apartment to see what was happening, Appellant and his associates opened fire, and a bullet struck Pugh as he ran around the corner to escape. The gang members then broke into the apartment by kicking in the door and smashing a window. Unbeknownst to them, Pugh's roommate, William Kellam, was hiding in a closet with an assault rifle. When Kellam saw a man in a puffy black jacket enter the apartment, Kellam opened fire, hitting Appellant in the shoulder and causing Appellant to drop his stolen 9mm gun and flee.

Later that night, Appellant went to a hospital a good distance from Pugh's apartment. He was wearing a puffy black jacket. The hospital reported to the police that a man had arrived with a wound from an assault rifle, so an officer came to the hospital and questioned Appellant. Appellant claimed to be the victim of a crime that occurred near the hospital, though he had not called the police to report any crime and there was no evidence of any crime in the area at the time. The officer did not believe Appellant's responses and took some of his bloody clothing. DNA analysis matched the blood on Appellant's clothing to blood on the 9mm gun recovered from Pugh's apartment and blood spatter found on blinds there.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA §

16-2-20 (parties to a crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. The pattern jury instruction for felony murder says in part: "A person (also) commits the crime of murder when, in the commission of a felony, that person causes the death of another human being (with or without malice)." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.20 (parentheticals in original). The commentary on the instruction notes that if the defendant is not also charged with malice murder, the words in parentheses should be omitted. See id.

In this case, although Appellant was not indicted for malice murder, the trial court included the parenthetical words in its jury instruction on felony murder. The court also charged that if the jury found that Appellant was "guilty of the offense of murder with malice aforethought," then the jury should find him guilty of "felony murder." Appellant contends that the references to malice and malice aforethought were error, because they served only to confuse the jury.

The trial court should not have made those references, but we see no reversible error. The trial court did not instruct the jury on "malice murder" or ever use that term; it accurately instructed the jury on the principles of felony murder based on the predicate felony of armed robbery; it explained that the State had the burden to prove every material allegation of the indictment and every essential element of the crimes charged beyond a reasonable doubt; and it provided the jury with the indictment. Any error was therefore cured. See *Sharpe v. State*, 291 Ga. 148, 151 (728 SE2d 217) (2012) (holding that an error in instructing the jury that an offense could be committed by a statutory method not charged in the indictment is cured where " 'the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt' " (citation omitted)).

Furthermore, if anything, the court's indication that the State had to prove malice aforethought for Appellant to be found guilty of felony murder made it *harder* for the State to make its case, since malice aforethought is not an element of felony murder (although it is not inconsistent with that crime). Instructional errors that could only benefit a defendant are harmless. See *Sanders v. State*, 283 Ga. 372, 375 (659 SE2d 376) (2008) (holding that because a "mutual combat charge authorizes a jury to find the defendant guilty of voluntary manslaughter in lieu of murder, it is a charge that benefits a defendant and, as such, a convicted defendant's complaint that it

was improper to give the charge is without merit"); *Brown v. State*, 250 Ga. 66, 72 n. 4 (295 SE2d 727) (1982) (holding that an erroneous charge on sanity was harmless because it was beneficial to appellant).

3. In instructing the jury on the form of its verdict, the trial court discussed the long list of charges against Appellant in four groups, organized by the date on which the various offenses were allegedly committed. In discussing each group of charges, the court instructed the jury that if it found Appellant guilty beyond a reasonable doubt of the crimes that occurred on that date, it would be authorized to find him guilty as to each such count. After discussing the four groups of charges, the court instructed the jury that if it had a reasonable doubt as to whether Appellant was guilty of "some or all of these offenses," it was the jury's duty to acquit and to write "not guilty" for each such count.

Appellant contends that the trial court's failure to mention the not guilty option while discussing each of the four date-based groups of charges unduly emphasized the guilty option. We disagree. An appellate court views the "jury charges as a whole 'to determine whether the jury was fully and fairly instructed on the law of the case.'" *Davis v. State*, 290 Ga. 757, 761 (725 SE2d 280) (2012) (citation omitted). So viewed, the jury in this case was fully and fairly instructed as to its duty in deciding each count of the indictment. After reviewing the four groups of crimes alleged, the court instructed the jury clearly that:

> If you do not believe that the defendant is guilty of *some or all of these offenses* or if you have any reasonable doubt as to the defendant's guilt, then it would be your duty to acquit the defendant, in which event the form of your verdict would be, we, the jury, find the defendant — and you would write in the words *"not guilty" as to each such count.*

(Emphasis added.) This direction was immediately followed by instructions that the jury had to consider and render a verdict on "each count of the indictment separately," that the State had to prove "every material allegation in each count and every element of the crime charged beyond a reasonable doubt for each count," and that the jury could find Appellant "guilty of one count and not guilty of another count" if it so chose. Considering the charges as a whole, the trial court did not unduly emphasize the jury's option to find Appellant guilty. Instead, the jury was properly instructed that if it found that the State had not carried its burden of proof as to any count in the indictment, the jury was to find Appellant not guilty of that count.

*Judgment affirmed. All the Justices concur.*

Decided October 7, 2013.

*David D. Marshall*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Lenny I. Krick, Paige Reese Whitaker*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Meghan H. Hill*, Assistant Attorney General, for appellee.