306 Ga. 753
FINAL COPY

S19A0491.  SMITH v. THE STATE.

Boggs, Justice.

Appellant Talib Nasheef Smith was convicted of murder, criminal street gang activity, and other crimes in connection with the 2013 shooting death of Khaseim Daru Walton. He appeals, asserting insufficiency of the evidence to support his convictions and error in a jury instruction.  For the reasons stated below, we affirm.[1]

---

[1] The crimes occurred on November 25, 2013. On April 8, 2014, a Fulton County grand jury indicted Smith and three co-defendants, Tshombe Stripling, Elijah Brewer, and Katrina Shardow, in connection with the Walton shooting. Some of Smith's co-defendants were also indicted in connection with a separate, non-fatal shooting nine days later. Smith was charged with malice murder, two counts of felony murder, participation in criminal street gang activity, attempted armed robbery, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. Smith and his co-defendants were tried together before a jury in February 2015, but the jury was unable to reach a verdict with respect to the charges in the Walton shooting. In May 2015, Smith and his co-defendants were re-tried before a jury on May 12 to 26, 2015, and Smith was found guilty on all counts. The trial court sentenced Smith to serve life in prison for malice murder, 15 years consecutive for criminal gang activity, 10 years consecutive for attempted armed robbery, and five years consecutive for possession of a firearm during the commission of a felony; the remaining counts were vacated as a matter of law or merged. On June 2, 2015, Smith filed a timely motion for new trial, which he amended with new counsel on August 18, 2016. After a hearing on

1. In *Stripling v. State*, 304 Ga. 131 (816 SE2d 663) (2018), this Court affirmed the convictions of Smith's co-defendants Tshombe Stripling and Elijah Brewer, who were tried together with Smith. There, this Court summarized the evidence, in the light most favorable to the verdicts, as follows:

> Walton was a cocaine dealer. Shortly before 9:00 p.m. on November 25, 2013, he drove one of his clients, Gloria Traylor, to a rooming house in the Oakland City area of Atlanta to show her a room that he was planning to rent as a place at which he could sell drugs. As they approached the house, Traylor saw a man she knew as "Chalee" standing outside near a vehicle that looked like a Suburban or a truck. At trial, Traylor identified Talib Smith as Chalee. A short time later, when Walton and Traylor were backing up to leave the house, a man got out of the Suburban-like vehicle, approached the driver's side of Walton's car, and asked to buy some drugs. After Walton prepared the cocaine, there was a struggle between him and the man standing outside the car. Traylor then saw three guns pointed in the driver's side window; she heard shots and ducked down. Walton drove into a pole, and Traylor got out of the car screaming. Walton had been shot four times; he died from his injuries soon after he arrived at the hospital. Traylor could not identify the man who asked to buy drugs or any of the people holding the guns.

September 13, 2016, the trial court denied the motion on October 27, 2016. Smith did not file a timely notice of appeal, but moved for an out-of-time appeal, which the trial court granted. The case was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

2

Paul Whibbey, the manager of the rooming house, looked out his window when he heard a commotion around the time of the shooting. He saw four individuals walking toward Walton's car from a black SUV. Whibbey testified that one had short dreadlocks and another had well-kept dreadlocks. At the time of the shooting, Stripling and Talib had twists or dreadlocks; Brewer did not have dreadlocks. Whibbey heard the people saying "get this, get that, get his money." He saw the man with the well-kept dreadlocks shoot a gun and heard eight or nine shots. Then the four individuals got back in the SUV and left. After the shooting, Whibbey was interviewed by Detective Kevin Leonpacher of the Atlanta Police Department, and he identified Neddrick Smith from a photo lineup as the shooter.

Neddrick, who had dreadlocks, was arrested and interviewed by the police. He denied any involvement in the shooting. He said that he had driven his Kia sedan to the rooming house that day with his brothers, Nemiyas and Nierris Smith, and Monquel Yancey to buy a heater from someone who lived there, but he had driven away from the house and just arrived at his aunt's house nearby when he heard the shots. He jumped back in his car and returned to the rooming house to investigate. He also said that his brother Talib, who some people say looks like him, may have been involved in the shooting.[2]

Nemiyas and Nierris also were interviewed by Detective Leonpacher, and their interviews were played for the jury after the two brothers testified and said that they did not remember most of what they had said in their interviews. Nemiyas told the detective that when he was

---

2 In addition to the facts recited in *Stripling*, evidence was presented at trial that Smith's mother, Tonya Smith, also told police that he looks like Neddrick and may have been involved. In addition, Whibbey testified that Nedrick and Smith "look so closely related."

outside the rooming house with Neddrick, Nierris, and Yancey before the shooting, he saw Knuckles (Stripling's nickname), Tommy Gunz (Brewer's nickname), Talib, Katrina Shardow, and someone named Pat pull up in a black Jeep and Talib get out. Nemiyas said that all of those people were members of the Bloods gang. Nierris similarly told Detective Leonpacher that he saw five people in a Jeep, including Talib, "Shombe," "Elijah," and a woman; Nierris identified Tshombe Stripling in a photo lineup as being in the Jeep, but did not identify Elijah Brewer in a lineup. About a week before the murder, Shardow had rented a black Jeep Cherokee SUV. Three weeks after the murder, she reported the SUV stolen; the police found it on fire a few minutes later.

Eleven shell casings were found at the scene of Walton's shooting, and ballistics testing showed that they were fired from at least three and as many as five different .45-caliber guns. One set of shell casings matched casings left by the gun Stripling used in a different shooting nine days after the murder. A cell phone that belonged to Brewer was found in a driveway at the scene. Brewer told his girlfriend that he had dropped the phone when there was a shooting and he ran. Cell phone records showed that Brewer, Stripling, and Talib were in frequent contact and near each other on the day of the shooting, including in Oakland City. About 30 minutes after the shooting, Stripling's phone called Neddrick's phone; Neddrick told Detective Leonpacher that this call was from Talib using Stripling's phone.[3]

Stripling did not testify at trial, but Detective Leonpacher testified that Stripling had admitted to him

[3] In addition to the facts recited in *Stripling*, evidence was presented at trial that, shortly after the shooting occurred, both Neddrick and Tonya Smith saw Smith distraught, threatening suicide, and pacing with a firearm.

4

in an interview that Stripling was a member of the Bloods. . . . Brewer testified at trial that he was a member of the Nine Trey Bloods and was part of a group that committed credit card fraud for the gang. He also said that Shardow was a member of the gang and Talib was affiliated with the gang.

(Footnotes omitted.) *Stripling*, 304 Ga. at 132-134. A gang expert also testified that "a faction of the Bloods known as the Nine Trey Bloods is active in the Oakland City area and commits various violent crimes, including murders and armed robberies. The gang makes most of its money through robberies, including robberies of drug dealers." Id. at 133 n.2.

When evaluating a challenge to the sufficiency of the evidence, this Court views all of the evidence presented at trial in the light most favorable to the verdicts and asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). On appeal, "this Court defers to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation

omitted.) *Manning v. State,* 303 Ga. 723, 724 (1) (814 SE2d 730) (2018). And "it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citations and punctuation omitted.) *Stripling,* 304 Ga. at 135 (1) (b).

(a) Smith first contends that the evidence was insufficient to support his murder conviction, arguing that Traylor was unsure in her testimony that she saw him at the scene and that Whibbey identified Neddrick as the shooter rather than Smith. But Smith's brothers, Nierris and Neddrick, told police that they saw Smith get out of the black SUV before the shooting, and Whibbey testified that the individuals from that vehicle were the ones who shot Walton. And while Whibbey initially thought that Neddrick was the shooter, he acknowledged that he only had a "side view" of the shooter and that Neddrick and Smith "look so closely related." Neddrick and Smith's mother acknowledged that resemblance, indicated that they both believed Smith may have been involved in the shooting, and further admitted that, shortly after the shooting, they saw Smith

6

distraught, threatening suicide, and pacing with a firearm. The trier of fact is authorized to accept or reject any portion of the testimony presented to it. See *Kemp v. State*, 303 Ga. 385, 388 (1) (a) (810 SE2d 515) (2018). Finally, cell phone records showed that the three co-defendants were in frequent contact on the day of the shooting, and Smith used Stripling's phone to call Neddrick. "Shared criminal intent may be inferred from the person's conduct before, during, and after the crime." (Citations and punctuation omitted.) *Stripling*, 304 Ga. at 135 (1) (b); see also OCGA § 16-2-20. The evidence presented at trial was sufficient to enable a rational trier of fact to conclude that Smith was guilty beyond a reasonable doubt of Walton's murder.

(b) Smith also contends that the evidence was insufficient to show that Walton's shooting was in furtherance of his and his co-defendants' gang interests. But in *Stripling*, Smith's co-defendant Brewer made the same argument on appeal, and we rejected it:

> Brewer admitted that he was a member of the Nine Trey Bloods gang and that he had participated in other criminal activity for the gang. Testimony from Brewer

7

and Detective Leonpacher showed that each of Brewer's co-defendants was in or affiliated with the gang. A gang expert testified that the gang makes most of its money through armed robberies, including robberies of drug dealers like Walton. Other testimony indicated that Walton was seeking to establish a permanent place of business for drug dealing in the Oakland City area, which is where Brewer's gang operates. As a whole, this evidence was sufficient to establish a nexus between the crimes against Walton and an intent to further the interests of the Nine Trey Bloods.

(Citations and punctuation omitted.) 304 Ga. at 134 (1) (b).

As we held in *Stripling*, the evidence presented at trial, viewed in the light most favorable to the verdict, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Smith was guilty of the crimes of which he was convicted.

2. Finally, Smith contends the trial court abused its discretion in overruling his objection to the State's requested charge on conspiracy. But

[i]t is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment. The State may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective. And the conspiracy may be inferred from the nature of the acts done, the relation of the

8

parties, the interest of the alleged conspirators, and other circumstances.

(Citations and punctuation omitted.) *Edge v. State*, 275 Ga. 311, 313 (6) (567 SE2d 1) (2002).[4] And only slight evidence is necessary to warrant a charge on the subject of conspiracy. *Brown v. State*, 304 Ga. 435, 441 (3) (819 SE2d 14) (2018). More than slight evidence supported the instruction here: Smith and his co-defendants rode together to the house in their gang territory where Walton was planning to sell drugs. They fled the scene together after robbing and shooting Walton, and cell phone evidence showed that they communicated with each other and were together before, during, and after the crimes at issue here. This evidence authorized the trial court to charge the jury on conspiracy. See id.

*Judgment affirmed. All the Justices concur.*

---

[4] Conspiracy was not alleged in the indictment of Smith and his co-defendants.

DECIDED SEPTEMBER 9, 2019.
Murder. Fulton Superior Court. Before Judge Ellerbe.
*Dell Jackson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M.*

*Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.