317 Ga. 457
FINAL COPY

S23A0682. BOWMAN v. THE STATE.

PINSON, Justice.

Appellant Torry Bowman and his friend, Maurice Goodman, got into an argument in a bar with brothers Alec and Britian Price. They confronted the Price brothers again outside the bar, and Alec was shot and died as a result of his injuries. Bowman was convicted of malice murder and other crimes in connection with Alec's death.[1]

---

[1] The shooting happened on October 3, 2017. On January 5, 2018, a Fulton County grand jury indicted Bowman for malice murder (Count 1), three counts of felony murder (Counts 2-4), three counts of aggravated assault with a deadly weapon (Counts 5, 6, and 13), two counts of possession of a firearm during the commission of a felony (Counts 7 and 14), two counts of possession of a firearm by a convicted felon under OCGA § 16-11-131 (Counts 8 and 15), two counts of possession of a firearm by a convicted felon through use of a firearm under OCGA § 16-11-133 (Counts 9 and 16), armed robbery (Count 10), and two counts of aggravated assault (Counts 11-12). Goodman was also indicted on Counts 1, 2, 5, 6, and 7. Counts 1 through 9 were related to the shooting death of Alec and aggravated assault of Britian, while Counts 10 through 16 were related to an incident on September 26, 2017, involving the same firearm but an unrelated victim. Bowman moved to sever Counts 1 through 9 from Counts 10 through 16 and moved to bifurcate Counts 3, 4, 8, and 9 from the remaining counts; the court denied both motions after a hearing. Bowman moved for reconsideration of his motion to bifurcate Counts 4 and 9, and the court denied the motion. Bowman pleaded guilty to Counts 10 through 16 and was tried individually by a jury from October 23 to 29, 2018 on Counts 1

On appeal, Bowman contends that the trial court erred by (1) instructing the jury on party to a crime, conspiracy, and provocation by words alone, and (2) failing to allow him to stipulate to his prior conviction to prove the required elements of Count 9, see OCGA § 16-11-133, without stipulating that the conviction involved the possession or use of a firearm. He also argues that these errors, taken together, deprived him of a fair trial under *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020).

Each claim fails. Although the State did not focus on theories of party to a crime or conspiracy during the trial, at least slight evidence supported the theories, so the trial court was authorized to give them. The instruction that provocation by words alone is not a defense to murder was an accurate statement of the law. Bowman's

through 9. The jury found Bowman guilty of all counts presented. Bowman was sentenced to serve life in prison with the possibility of parole on Count 1, 20 years on Count 6 to run concurrent with Count 1, 15 years on Count 9 to run consecutive to Count 1 and suspended, ten years on Count 10 to run concurrent with Count 1, and 15 years on Count 16 to run consecutive to Count 1 and suspended. The remaining counts were either merged or vacated by operation of law. Bowman timely moved for a new trial, and he amended his motion twice through new counsel. Following a hearing, the court denied the motion for new trial on January 11, 2023. Bowman timely appealed. The case was docketed to the April 2023 term and submitted for a decision on the briefs.

argument about the stipulation fails because the State had to establish that his prior conviction involved the use or possession of a firearm to prove that he violated OCGA § 16-11-133, so making him choose between having that element proven by stipulation or evidence did not violate the rule of *Old Chief v. United States*, 519 U.S. 172 (117 SCt 644, 136 LE2d 574) (1997). And because Bowman has failed to establish error, we need not address cumulative prejudice. So we affirm his convictions and sentence.

1. The evidence at trial showed the following. On October 3, 2017, Alec and Britian went to a party and then walked to a nearby bar. The interactions inside the bar were captured on surveillance video and played for the jury. Bowman and Goodman were standing just inside the bar entrance. Soon after the Price brothers entered, Bowman, who was talking on a cell phone, bumped into Alec as Bowman walked toward the exit.

Alec started arguing with Goodman. Britian, who was standing next to Alec and Goodman, tried to intervene, at one point standing between the two men with his arms outstretched. Britian said he

3

"didn't think [the argument] was anything serious," but described Goodman as "hyped . . . compared to [Alec]" during the confrontation.

Meanwhile, Traven Guess, a bar security guard, walked Bowman toward the exit. He held the door open for Bowman. Guess testified that Bowman was "aggressive" and "rude" before leaving through the door. Anthony Nobles, another bar security guard, testified that he saw a semiautomatic handgun sticking out of Goodman's pants pocket. He told Guess about the firearm and instructed him not to let Bowman and Goodman reenter because they were together and at least one of them had a gun.

Guess and Nobles then moved to address the confrontation between the Price brothers and Goodman. Goodman walked to the exit while waving his hand at the Price brothers, gesturing to them to "come outside" in what Britian testified was a "taunting" manner and an invitation to fight.

After leaving the bar, Bowman and Goodman tried to get back into the bar through the exit door but were not allowed inside.

Britian testified that he saw the two standing outside the bar, continuing to gesture toward him and Alec to come outside.

Shortly after, the Price brothers left the bar and turned left, where they were again confronted by Bowman and Goodman. During that argument, Bowman said, "This is my brother," referring to Goodman, and Britian said, "[T]his is my blood brother. This is my real brother," referring to Alec. The argument outside lasted approximately two minutes, and then Bowman and Goodman "left real quick and went around that [street] corner."

Britian testified that less than a minute later, Bowman came back around the corner with a gun in his hand. Bowman "immediately started shooting." Alec was shot three times and died as a result of being shot through the heart. Britian was "[a] hundred percent" sure that Bowman shot Alec.

Five 9mm cartridge cases were found around the street outside the bar. A GBI firearms examiner testified that four of them came

from the same gun.[2] Although no gun was found at the crime scene, the gun the cartridges came from was a semiautomatic gun used in a separate incident related to Bowman, identified only to the jury as Case Number 172692002.[3]

Between 12:00 and 1:00 a.m. on the night of the shooting, a police officer tried to pull over a car after it ran a red light. After the officer turned on his lights and sirens, the car turned the wrong way down a one-way street and drove through a gas-station parking lot to cut through to another gas-station parking lot, where the car eventually stopped. Police searched the car and arrested both Bowman, who was the driver, and Goodman, who was in the passenger seat.

2. Bowman claims that the trial court erred by giving certain jury instructions, each over his objection at trial. When instructional

---

[2] Another cartridge case was determined to be from a separate incident because it was highly corroded, indicating that it had been fired before the shooting in this case.

[3] As discussed in footnote 1, the charges related to Case Number 172692002 were from an incident on September 26, 2017, and brought in the same indictment as the shooting of Alec (Counts 10 through 16). Bowman pleaded guilty to those charges.

errors are preserved, an appellate court reviews jury instructions "as a whole to determine whether the jury was fully and fairly instructed on the law of the case." *Redding v. State*, 293 Ga. 766, 769 (3) (749 SE2d 717) (2013) (citation and punctuation omitted). We review each claimed instructional error in turn.

(a) Bowman contends that the trial court erred by instructing the jury on party to a crime and conspiracy when the State's theory of the case throughout trial was that Bowman was the shooter and conspiracy was not charged in the indictment.[4] But as we have repeatedly held, the State need not charge or even argue a theory of

---

[4] On party to a crime, the trial court instructed:

[E]very party to a crime may be charged with and convicted of commission of the crime. A person is a party to a crime only if that person directly commits the crime, intentionally helps in the commission of the crime, intentionally advises, encourages, hires, counsels, or procures another to commit the crime.
　　Any party to a crime who did not directly commit the crime may be prosecuted for . . . commission of the crime upon proof that the crime was committed and that the person was a party to it even though the person alleged to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, is not amenable to justice, or has been acquitted.
And on conspiracy, the court instructed:
　　[A] conspiracy is an agreement between two or more persons

7

party to a crime or conspiracy for a crime to be proven in that manner. See *Leeks v. State*, 303 Ga. 104, 106-107 (2) (810 SE2d 536) (2018); *Mathews v. State*, 314 Ga. 360, 366 (2) (a) (877 SE2d 188) (2022); *Shepard v. State*, 300 Ga. 167, 170-171 (3) (794 SE2d 121) (2016). So even if the party requesting a charge on a particular theory did not advance that theory, that instruction is authorized as long as "slight evidence . . . support[s] the theory of the charge." *Calmer v. State*, 309 Ga. 368, 369-370 (2) (846 SE2d 40) (2020) (citation and punctuation omitted); *Pennington v. State*, 306 Ga. 854, 855-856 (834 SE2d 63) (2019). We have thus rejected challenges to jury instructions on both party to a crime and conspiracy where the State did not allege or focus on those theories but slight evidence supported them. See *Taylor v. State*, 312 Ga. 1, 14-15 (5) (860 SE2d

---

to do an unlawful act, and the existence of a conspiracy may be established by proof of acts and conduct as well as by proof of an expressed agreement. When persons associate themselves in an unlawful enterprise, any act done by any party to the conspiracy to further the unlawful enterprise is considered to be the act of all the conspirators[; h]owever, each person is responsible for the acts of others only insofar as such acts are naturally or necessarily done to further the conspiracy. Whether or not a conspiracy existed in this case is a matter for you to determine.

470) (2021) (holding that "more than slight evidence" supported a conspiracy instruction, even when conspiracy was not alleged in the indictment and conspiracy was not the theory of the State's case); *Smith v. State*, 306 Ga. 753, 758 (2) (833 SE2d 117) (2019); *Leeks*, 303 Ga. at 106-107 (2) (holding that the trial court did not err in instructing on party to a crime even though the defense was mistaken identity and the State's theory was that the defendant was the shooter).

We reject Bowman's similar challenge here. At least slight evidence supported theories that Bowman was guilty of Alec's murder as a party to the crime or as part of a conspiracy with Goodman. "Whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed." *Dublin v. State*, 302 Ga. 60, 65 (3) (805 SE2d 27) (2017) (citation and punctuation omitted). And "[t]he State may prove a conspiracy by showing that two or more persons tacitly came to a mutual understanding to pursue a criminal objective." *Shepard*, 300 Ga. at 170 (3) (citation and punctuation omitted). Here, Bowman

9

and Goodman were together before, during, and after the crime. While in the bar, Goodman had a semiautomatic handgun, and the murder weapon was later determined to be a semiautomatic handgun connected to Bowman through a prior incident. After leaving the bar, the two tried to get back into the bar through the exit. Then, outside the bar, they stood together, Goodman waved at the Price brothers to come outside, and, when they did, Bowman and Goodman again confronted the Price brothers together, with Bowman calling Goodman his "brother." After arguing with the Price brothers for a couple minutes, Bowman and Goodman went around the corner, and less than a minute later, according to Britain's testimony, Bowman came back around the corner with a gun in his hand and started shooting. Bowman and Goodman then fled together, and they were pulled over—with Bowman driving—within an hour of the shooting after trying to evade the police. Given Britian's testimony identifying Bowman as the shooter, this evidence supported the theory that Bowman was the shooter. But even if the jury disbelieved Britian's identification of Bowman as the shooter, the evidence also

authorized the jury to accept a party-to-the-crime theory in which Goodman was the shooter—based on the testimony that Goodman had a gun in the bar—but that Bowman was also involved, including by serving as the getaway driver. See *Hawkins v. State*, 304 Ga. 299, 301 (2) (818 SE2d 513) (2018) (holding that "substantial evidence" supported a party-to-a-crime theory when the evidence showed that defendant was "an active participant in the heated altercation" with victim's group, defendant was with someone who escalated the altercation just before the shooting, and defendant himself "may have been the actual shooter"); *Wright v. State*, 296 Ga. 276, 284 (3) (766 SE2d 439) (2014) (holding the evidence was sufficient to support convictions under a party-to-a-crime theory based in part on evidence that the defendant drove the getaway car after the crimes). And the same evidence supports a theory of conspiracy in which Bowman and Goodman formed a tacit agreement sometime after leaving the bar to shoot the Price brothers outside, with either Bowman or Goodman as the shooter. See *Smith*, 306 Ga. at 758 (2) (holding that "[m]ore than slight evidence" supported a conspiracy instruction

11

when the evidence showed that defendant and his co-defendants drove together to the crime scene in their gang territory and fled the scene together after the crimes, and cell phone evidence showed they communicated and were together before, during, and after the crimes charged). Even if the jury disbelieved Britian's testimony that Bowman was the shooter, it could have credited other evidence showing Bowman and Goodman went to the bar together, and that Bowman talked to Goodman before the shooting and drove the get-away car afterward.

(b) Bowman next contends that the trial court erred by instructing the jury that provocation by words alone was not a defense to murder, even though the jury was not instructed on voluntary manslaughter and provocation was not an issue in the case.[5] Bowman argues that the instruction harmed him by emphasizing a legal theory that the jury did not need to consider.

---

[5] The trial court instructed the jury that "provocation by words alone is not sufficient to free an accused from the crime of murder when the killing is done solely in resentment of such provoking words." Although Bowman did not object at the charge conference to including the charge, he objected at the close of the jury charge.

12

Giving this instruction was not error. Jury instructions must tell the jury the law of the case "fully and fairly," *Redding*, 293 Ga. at 769 (3), and are authorized if supported by "slight evidence," *Calmer*, 309 Ga. at 369-370 (2). As Bowman concedes, the given instruction was undoubtedly an accurate statement of law: provocation by words alone will not justify murder. See *Rodriguez-Nova v. State*, 295 Ga. 868, 873 (4) (d) (763 SE2d 698) (2014) (holding that the trial court's instruction, following the pattern jury instruction, that "[p]rovocation by words alone will, in no case, justify such excitement of passion sufficient to free the accused *from the crime of murder* or to reduce the offense to manslaughter when the killing is done solely in resentment of such provoking words" was a correct statement of the law (emphasis added)). And there was slight evidence supporting that charge based on the testimony about the verbal altercations between Bowman, Goodman, and the Price brothers. Bowman points out that provocation was not relevant to a theory of the crime or a defense, but it was not error to confirm as much for the jury—that is, that even if the jury believed that "provoking

words" pushed Bowman or Goodman to shoot Price, that would not serve as a justification for murder. This claim of error fails.

3. Bowman contends that the trial court erred by not allowing him to stipulate to his prior conviction to prove Count 9, felon in possession of a firearm under OCGA § 16-11-133, without also stipulating that his prior felony involved the possession or use of a firearm.

Count 9 of Bowman's indictment charged him with committing a felony against the person of another while possessing a handgun and "having been previously convicted of a felony involving the possession or use of a firearm," a violation of OCGA § 16-11-133. Before trial, Bowman moved to bifurcate Counts 3, 4, 8, and 9 from the remaining counts. The trial court denied Bowman's motion to bifurcate during a pretrial hearing, but explained that Bowman could stipulate to the underlying felonies so the State would not be allowed to present additional evidence of those felonies. At that time, Bowman agreed to "stipulat[e] that Mr. Bowman is a convicted felon." When Bowman again sought to bifurcate Counts 4 and 9 just before

14

the trial started, he argued that he should not have to stipulate that his prior felony involved a firearm. The court explained that the State was required to prove that the underlying felony involved a firearm for Count 9, and "[t]o the extent the State is required to prove its case and the defense does not wish to stipulate to an element, that's simply a matter of what happens during the course of the trial." After the State's final witness, the trial court read the following stipulation into the record: "For Count 9, possession of a firearm by a convicted felon, of indictment 18SC156767, Torry Bowman is a convicted felon and said prior felony involved the possession or use of a firearm." There was no further evidence or mention of Bowman's prior felony.

Bowman now contends that he should not have been put to the choice between stipulating that his prior felony involved a firearm and having the State put on evidence about that prior felony. In support, he relies on *Old Chief*, in which the United States Supreme Court held that the trial court abused its discretion by not allowing the defendant to stipulate to a prior conviction while omitting the

name of the prior offense to satisfy the prior-conviction element of 18 USC § 922 (g) (1), the federal felon-in-possession statute. See *Old Chief*, 519 U.S. at 174, 191 (II) (B) (4). There, the Court reasoned that the additional information about the prior offense was not needed to prove the government's case, so under Federal Rule of Evidence 403, the risk of unfair prejudice from the jury hearing inflammatory details of a prior conviction—even if only the name or nature of the offense—outweighed its negligible probative value. See id. at 180-191 (II) (B). Bowman contends that the same is true here: his stipulation could have satisfied the State's burden to prove the prior felony element of OCGA § 16-11-133, rendering further details about his prior conviction unnecessary, and so the risk of unfair prejudice from the jury hearing any such details outweighed their negligible probative value.

As an initial matter, it is not clear from the record that Bowman preserved this claim of error for review. Although Bowman argued before trial that he should not have to stipulate that his prior

felony involved a firearm, the court later entered just such a stipulation at the close of the State's case, and he has not pointed to anything in the record that suggests he did not agree to that stipulation at that time. See *McKinney v. State*, 281 Ga. 92, 95 (2) (635 SE2d 153) (2006) ("A stipulation is a 'voluntary agreement between opposing counsel concerning disposition of some relevant point. . . .'") (quoting Black's Law Dictionary, 1269 (5th ed. 1979)); cf. *Adams v. State*, 306 Ga. 1, 3 (1) (829 SE2d 126) (2019) (in the context of general evidentiary objections, "to preserve an objection for ordinary appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered").

But even assuming this claim is properly before us (the State has not argued that this claim was not preserved), Bowman's argument fails at its premise. His preferred stipulation—stipulating to a prior felony, but not to the fact that it involved a firearm—would not have satisfied the prior-felony element of OCGA § 16-11-133, which, as relevant to the indicted offense here, requires proof that the prior felony was "any felony involving the use or possession of a firearm."

Indeed, in *Brooks v. State*, 309 Ga. 630 (847 SE2d 555) (2020), we held that the evidence to support a defendant's OCGA § 16-11-133 conviction was insufficient because the stipulation to the defendant's prior conviction *failed* to include that the prior conviction involved the possession or use of a firearm and the title of the crime did not suggest the possession or use of a firearm. See id. at 632-633 (1) (a). So unlike in *Old Chief*, proving that Bowman's prior conviction involved the possession or use of a firearm was necessary to prove the State's case, which means *Old Chief*'s Rule 403-based reasoning does not apply. Indeed, given the State's need to prove a prior conviction involving the possession or use of a firearm—the kind of prior conviction charged in Bowman's indictment—the stipulation entered here appears to be about as narrowly tailored as it could be.

In his reply, Bowman contends that his offer to stipulate "implicitly included a stipulation to all of the required elements under OCGA § 16-11-133." But he offers no citation to the record for his assertion that his preferred stipulation could have been construed so broadly, and we see nothing in the record suggesting he offered to

18

stipulate to anything beyond the fact that he is a convicted felon, which, under *Brooks*, see 309 Ga. at 631-634 (1), would not have satisfied the State's burden under OCGA § 16-11-133.

4. Finally, Bowman contends that, taken together, the trial court's errors resulted in cumulative prejudice that denied his right to a fair trial. See *Lane*, 308 Ga. at 21 (4). But Bowman has failed to establish even one trial court error, so we need not address cumulative prejudice. See *Wynn v. State*, 313 Ga. 827, 840-841 (6) (874 SE2d 42) (2022).

*Judgment affirmed. All the Justices concur.*

Decided October 11, 2023.

Murder. Fulton Superior Court. Before Judge Dempsey, Senior Judge.

*Lauren B. Shubow*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Charles A. Jones, Jr., Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth C. Rosenwasser, Assistant Attorney General*, for appellee.