NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 5, 2026

S25A1044.  SELLERS v. THE STATE.

COLVIN, Justice.

Appellant Christopher Sellers was convicted of malice murder and other crimes in connection with the shooting death of Thedarious Mitchell and sentenced to life in prison without the possibility of parole, plus a term of years.[1] On appeal, Appellant

---

[1] The crimes occurred on April 2, 2019. On December 1, 2020, a DeKalb County grand jury returned an indictment charging Appellant with malice murder (Count 1), two counts of felony murder (Counts 2 and 3), aggravated assault (Count 4), possession of a firearm by a convicted felon (Count 5), and possession of a firearm during the commission of a felony (Count 6). At the conclusion of a jury trial held from October 9 to October 11, 2023, the jury returned a verdict of guilty on all counts. The trial court sentenced Appellant to life in prison without the possibility of parole for malice murder (Count 1) and issued consecutive sentences of 10 years in prison for possession of a firearm by a convicted felon (Count 5) and five years in prison for possession of a firearm during the commission of a felony (Count 6). Appellant's remaining charges were either merged or vacated by operation of law. Appellant filed a motion for new trial on November 2, 2023, which he amended through new counsel on August 9, 2024. Appellant's motion was heard on November 25, 2024, and denied by written order on January 3, 2025. On January 21, 2025, Appellant filed a timely notice of appeal to this Court. His case was docketed to the August 2025 term of court and submitted for a decision on the briefs.

argues that the evidence presented at trial was insufficient as a matter of constitutional due process to support his conviction for malice murder, the trial court plainly erred by charging the jury on parties to a crime, and his sentence of life without parole constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and "similar provisions" of the Georgia Constitution.[2] As explained below, Appellant's arguments fail, and we accordingly affirm his conviction for malice murder and sentence of life without parole.[3]

1. The evidence at trial showed the following. At about 8:45

---

[2] Appellant's brief cites "Article I, Par. XVIII" of the Georgia Constitution, but there is no such provision. Appellant appears to be referring to Article I, Section I, Paragraph XVII, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted[.]" Ga. Const. of 1983, Art. I, Sec. I, Par. XVII. See US Const. Amend. VIII (same). We therefore construe his brief as raising his sentencing claim under that provision. But we decline to consider his claim under the Georgia Constitution because Appellant does not argue that the federal Constitution and the Georgia Constitution apply differently to his sentence. See *Regan v. State*, 317 Ga. 612, 612 n.2 (2023) (declining to consider the appellant's equal protection claim under the Georgia Constitution because the appellant failed to argue that the Georgia Constitution applied differently to his equal protection claim than the federal Constitution).

[3] Appellant does not challenge on appeal his convictions for possession of a firearm by a convicted felon (Count 5) and possession of a firearm during the commission of a felony (Count 6).

p.m. on April 2, 2019, law enforcement officers received a shots-fired call regarding an incident at a motel in DeKalb County. By the time the first detective arrived at the scene, first responders had already transported the victim, who was later identified as Mitchell, to the hospital. Despite an emergency surgery and other resuscitative efforts, Mitchell died from a single gunshot wound to his back.

Detectives recovered a single shell casing and a small bag of suspected marijuana from the scene. They also obtained security camera footage from the motel. This footage, which was entered into evidence and played for the jury, showed that at 8:43 p.m., two men entered Mitchell's hotel room. Then, at 8:44 p.m., Mitchell ran out of his room and into the hotel's breezeway, followed by the two men and a third person. One of the men then shot Mitchell before the three fled the scene.[4]

R. W. was in the motel room with Mitchell when the men entered. R. W. testified that "there was a knock at the door," and

---

[4] The security footage captured the incident from a distance and was of insufficient quality to identify the assailants.

when Mitchell answered it, "two people ... pushed their way in, and then they started beating him." According to R. W., Mitchell "managed to get away ... and went down the hall, and one [of the men] stepped out and shot him in the back."[5]

R. W. also told a detective that she knew the man who had shot Mitchell by his nickname, "Baldhead," and that she had heard people call him "Chris." She gave detectives the hotel and room number where he stayed. And after a detective obtained a copy of the driver's license of the man staying in that hotel room, which showed that the occupant was Appellant (Christopher Sellers), R. W. identified Appellant in a photo lineup as the shooter.[6] The detective testified at trial that additional statements from R. W. led him to believe that R. W. engaged in sex work; that Appellant had

---

[5] In a written statement, which a detective described at trial, R. W. reported that during the fight in the hotel room, one of the men pistol-whipped Mitchell in his head or his face, and it was this man who subsequently shot Mitchell. Mitchell's autopsy did not reveal any injuries consistent with him being pistol-whipped, but the medical examiner testified that because Mitchell had been shot soon thereafter, "his body would not react the same way that yours or ours [would]." Mitchell would take longer to bruise, the medical examiner explained, "because he ha[d] low blood pressure and then he ha[d] no blood pressure."

[6] R. W. also identified Appellant at trial.

been her procurer; that she had switched to working for Mitchell; and that Mitchell was now her procurer.

The jury also heard the testimony of Calvin Leslie, who met Appellant while they were both incarcerated on unrelated charges in Nevada. According to Leslie, Appellant relayed that he had shot a man in the head in a motel in Georgia; that the man owed him money; that a "girl" was there; but that he would "beat the case" because the "girl ... [was] strung out on drugs." Appellant claimed that "it was like a drug deal went bad." And according to Leslie, Appellant was "laughing and joking" when he described what had happened. Leslie claimed the conversation left him feeling so "disturbed" that he decided to report it to the DeKalb County District Attorney's Office.

2. In his first enumeration of error, Appellant argues that the evidence was insufficient as a matter of constitutional due process to support his conviction for murder because R. W. and Leslie were not credible and because Leslie's testimony was inconsistent with R. W.'s and inconsistent with the physical evidence. This argument

5

fails, however, as explained below.

"When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the verdict and inquire whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Collins v. State*, 321 Ga. 215, 218 (2025) (citing *Jackson v. Virginia*, 443 US 307, 319 (1979)).

R. W. testified that Appellant, assisted by an unidentified man, entered Mitchell's motel room, beat him, and shot him when he tried to flee. She identified Appellant in a photo lineup and again at trial, and the events she described were partially captured on the motel's security cameras. Additionally, Leslie testified that Appellant admitted he shot a man in a Georgia motel in the presence of a female witness. This evidence was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder. See *Collins*, 321 Ga. at 219 (holding that the evidence was constitutionally sufficient to support the appellant's convictions for malice murder and other crimes where a witness identified the

6

appellant as one of the two men who participated in the shooting and where another witness overheard the appellant admit his involvement in the shooting to a third person); *Young v. State*, 292 Ga. 443, 443–44 (2013) (holding the evidence was constitutionally sufficient to support the appellant's convictions for malice murder where the appellant's fingerprint was found at the scene and a jailhouse informant testified that the appellant admitted to the informant that he shot the victim). Though, on appeal, Appellant attacks the witnesses' credibility and contends that there were conflicts in the evidence, questions of credibility and the resolution of such conflicts are left to the jury under the *Jackson* standard and the resolution of such issues "adversely to the defendant does not render the evidence insufficient." *Jones v. State*, 314 Ga. 400, 406 (2022) (quotation marks omitted)).

3. Next, Appellant claims that the trial court plainly erred by charging the jury on parties to a crime. Appellant argues that this instruction was erroneous because the State claimed that Appellant was the shooter and because no one other than Appellant was ever

charged or arrested in relation to Mitchell's killing. Appellant's argument is difficult to parse, but he appears to further claim that the parties-to-a-crime instruction affected his substantial rights by relieving the State of its burden to prove each element of the crime charged beyond a reasonable doubt. As explained below, Appellant's claim fails.

Appellant was charged individually and as a party to a crime with malice murder, two counts of felony murder, and aggravated assault. Prior to trial, the State submitted its requested jury instructions, which included a request for the pattern charge on parties to a crime. Defense counsel did not object to this charge at the charge conference. Accordingly, consistent with the State's request, the trial court charged the jury that:

> Every party to a crime may be charged with and convicted of commission of a crime. A person is a party to a crime only if that person[:]
>
> (a) directly commits the crime;
> (b) intentionally helps in the commission of the crime;
> (c) intentionally advises, encourages, hires, counsels, or procures another to commit the crime;

8

or

(d) intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity.

Defense counsel did not object to the charge after it was given.

Because Appellant's trial counsel did not object to the parties-to-a-crime charge, we review Appellant's claim for plain error only. See OCGA § 17-8-58(b). See also *Williams v. State*, 321 Ga. 390, 393 (2025). When determining whether a jury instruction constitutes plain error, the Court applies the following test:

First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. at 393–94. "If one prong of the plain error test is not satisfied, we

9

need not address the other prongs of the test." Id. at 394. Plain error presents a high standard, and establishing it is "difficult, as it should be." Id. (quotation marks omitted).

Appellant's claim fails because it is not error — let alone clear or obvious error — for the trial court to give the parties-to-a-crime instruction where the State contends that the appellant was the shooter, so long as there was slight evidence to support the charge. See *Leeks v. State*, 303 Ga. 104, 107 (2018) (holding that the trial court did not err in charging the jury on party to a crime because there was slight evidence supporting the theory, even though the State maintained that the appellant was the shooter). This rule remains applicable, where, as here, "the party requesting a charge on a particular theory did not advance that theory" at trial. *Nunnally v. State*, 319 Ga. 701, 710 (2024). See also *Bowman v. State*, 317 Ga. 457, 460–61 (2023) ("[A]s we have repeatedly held, the State need not charge or even argue a theory of party to a crime or conspiracy for a crime to be proven in that manner.… So even if the party requesting a charge on a particular theory did not advance

10

that theory, that instruction is authorized as long as slight evidence … support[s] the theory of the charge." (citation and punctuation omitted)).

Here, the instruction was supported by at least slight evidence: R. W. testified that two men broke into their room; that the men beat Mitchell; and that Appellant shot Mitchell as he fled. This evidence supported the State's theory that Appellant was the shooter. But even if the jury only partially credited R. W.'s testimony — such that it believed Appellant was one of the two men, but not necessarily the shooter — R. W.'s testimony authorized a murder conviction on the theory that Appellant was a party to the crime. See *Bowman*, 317 Ga. at 462 (holding that there was at least slight evidence to support the parties-to-a-crime instruction where a witness testified that he was "[a] hundred percent" sure that the defendant was the shooter because the jury could have disbelieved the witness's testimony and because the evidence also authorized the jury to accept a party-to-the-crime theory in which the defendant's associate was the shooter). R. W. testified that two men entered Mitchell's room

11

together, that both participated in the beating, and that both fled after the shooting. And the assailants' entrance into the room, the shooting, and their flight was captured on security footage. A jury could infer from this evidence that both men were a party to Mitchell's murder, even if Appellant was not the shooter. See id. (explaining that "[w]hether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed" (quoting *Dublin v. State*, 302 Ga. 60, 65 (2017))). Because the trial court's instruction was supported by at least slight evidence, Appellant has failed to establish that the court made a clear or obvious legal error by giving it. And because Appellant has failed to establish one of the elements of plain error, his plain error claim fails. *Williams*, 321 Ga. at 394.

4. In his last enumeration, Appellant contends that his sentence of life without the possibility of parole constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I,

Section I, Paragraph XVII of the Georgia Constitution.[7] Appellant's briefing is unclear, but he appears to advance three separate arguments in support of his cruel-and-unusual-punishment claim: first, sentences of life without parole are always unconstitutional, in light of society's "evolving standards of decency"; second, *his* sentence of life without parole is unconstitutional because it is disproportionate to his crime; and third, the trial court violated his due process rights by sentencing him without assessing, on the record, whether the sentence imposed was proportionate to the particular circumstances of his crime. We examine each argument below and conclude that one of these arguments is waived and that the other two fail on the merits.

(a) Immediately following the verdict, the trial court conducted a brief sentencing hearing in which the State argued that Appellant should be sentenced to life in prison without the possibility of parole, and Appellant argued that he should be sentenced to life in prison with the possibility of parole. Though Appellant's counsel argued

---

[7] See note 2, supra.

that his client should receive a more lenient sentence than the State recommended, Appellant's counsel did not argue that life without parole was an unconstitutional or otherwise legally impermissible sentence for malice murder. Following argument, the trial court sentenced Appellant, who was 41 years old at the time of the offense, to life without parole, and Appellant did not object.

(b) We begin by examining whether Appellant's claims are preserved for appellate review. As a general rule, to preserve a claim for appellate review, an appellant must have raised it at the first available opportunity. See *Regan*, 317 Ga. at 613. Because the first opportunity to object to a sentencing statute does not usually arise until after the jury has returned a guilty verdict, such claims must typically be raised at or before sentencing. See id. We have explained, however, that there is an exception to this general rule: a void sentence — that is, a sentence that the law does not allow — may be challenged at any time, and "the failure to object at trial does not waive such a claim." *Marshall v. State*, 309 Ga. 698, 702 (2020). See *Veal v. State*, 298 Ga. 691, 699 (2016) ("[C]laims that a sentence

is void (i.e., illegal) are not subject to general waiver or procedural default rules[.]"), disapproved of on other grounds by *Jones v. Mississippi*, 593 US 98 (2021). By contrast, a claim that a sentence is merely voidable — that is, erroneous — is waived if it is not raised at the appropriate time. *Veal*, 298 Ga. at 699 ("[A] defendant ... forfeit[s] a claim that his sentence was merely voidable (i.e., erroneous) if he does not raise the claim in timely and proper fashion.").

In Appellant's first two arguments, he contends that his sentence of life without parole is prohibited by the cruel and unusual punishment clauses of the United States and Georgia constitutions. In doing so, Appellant implicitly argues that his sentence of life without parole is void. See *Veal*, 298 Ga. at 701 ("[A] sentence imposed in violation of [a] *substantive* [constitutional] rule [regarding the Eighth Amendment] ... is not just erroneous but contrary to law and, as a result, void." (quotation marks omitted)). Accordingly, we may review these claims even though they are raised for the first time on appeal. In his third argument, however,

Appellant appears to argue that the trial court erred by failing to perform a procedure he contends was required when issuing a sentence of life without parole. To the extent Appellant makes such an argument, he merely advances a claim that his sentence is voidable. See *Jones v. State*, 278 Ga. 669, 670 (2004) (explaining that "[a]ssertions taking issue with the procedure employed in imposing a valid sentence or questioning the fairness of an imposed sentence" present a claim that the sentence was voidable, rather than void). And because Appellant raises that claim for the first time on appeal, it is waived. See *Marshall*, 309 Ga. at 704 (holding that because the appellant alleged that his sentence was voidable, rather than void, he waived his claim by failing to raise it in the trial court). See also *Dougherty v. State*, 321 Ga. 577, 585 (2025) ("[T]o the extent that Dougherty now argues that the Georgia Constitution's due process clause required the trial court to sentence Dougherty proportionately with [his co-indictee], Dougherty did not make any such objection at sentencing, so this argument is not preserved on appeal.").

(c) We now turn to the merits of Appellant's remaining two claims. Both fail.

(i) In his first argument, Appellant appears to contend that sentences of life without parole for murder are categorically unconstitutional. His brief suggests that life-without-parole sentences are unconstitutional under society's "evolving standards of decency" because such sentences are just as cruel as the death penalty but lack the attendant "sentencing and appellate protections." We have previously rejected such claims, however. See *Mitchell v. State*, 314 Ga. 566, 575–76 (2022) (rejecting a claim that "evolving standards of decency" and recent Eighth Amendment caselaw from the United States Supreme Court required this Court to overturn past cases holding that the procedural requirements found in OCGA § 17-10-30(b) are not applicable when the trial court issues a sentence of life without parole on a charge for which the State did not seek the death penalty). See also *Williams v. State*, 291 Ga. 19, 21 (2012) ("There is no state or federal constitutional prohibition against sentencing an adult ... to a term of life in prison

17

without parole for the commission of a homicide."), disapproved of on other grounds by *Kimbrough v. State*, 300 Ga. 516, 520 n.6 (2017). Because this claim is squarely foreclosed by applicable precedent, it fails.[8]

(ii) Next, Appellant contends that his sentence of life without parole is unconstitutional because it is disproportionate to his crime. We have explained that

> [t]he Eighth Amendment of the United States Constitution bans "cruel and unusual punishments," including those that are grossly disproportionate to the crime committed. To determine whether a sentence is grossly disproportionate, a court first compares the gravity of the offense and the severity of the sentence. When evaluating the gravity of the offense as part of the threshold comparison, courts look not only at the statutory elements of the offense, but also the particular circumstances of the crime committed as shown by the record. Moreover, courts must defer to the legislature in determinations of sentencing parameters unless a sentence is so overly severe or excessive in proportion to the offense as to shock the conscience. In the rare case

---

[8] As mentioned above in note 2, we decline to consider Appellant's cruel-and-unusual-punishment claim under the Georgia Constitution. Accordingly, we express no view as to whether the "evolving standards of decency" test is the proper standard for analyzing the state constitutional right. See *Conley v. Pate*, 305 Ga. 333, 339–41 (2019) (Peterson, J., concurring) (arguing Georgia cases applying that standard to the Georgia Constitution "cannot be squared with the original public meaning of the Georgia Constitution").

that this threshold comparison leads to an inference of gross disproportionality, a court next compares the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. It is the rare case in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny.

*Sillah v. State*, 315 Ga. 741, 754–55 (2023) (citations and punctuation omitted). Under this standard, Appellant's claim fails at the first stage of the analysis. The General Assembly has decreed that murder "shall be punished by death, by imprisonment for life without parole, or by imprisonment for life." OCGA § 16-5-1(e)(1). And, as stated above, "courts must defer to the legislature in determinations of sentencing parameters unless a sentence is so overly severe or excessive in proportion to the offense as to shock the conscience." *Sillah,* 315 Ga. at 755 (quotation marks omitted). The evidence recounted above shows that Appellant broke into the victim's motel room, beat him, and shot him in the back when he tried to flee, killing him. Under these circumstances, Appellant's sentence does not "shock the conscience" and therefore fails to raise

an inference of gross disproportionality. Id. (holding that the defendant's sentence of life without parole for malice murder failed to raise an inference of gross disproportionality where the defendant committed an armed robbery during which the victim was shot and killed); *Sosebee v. State*, 317 Ga. 424, 432 (2023) (holding that the defendant's recidivist sentence of life without parole for felony murder failed to raise an inference of gross disproportionality where the defendant flipped his vehicle while fleeing from police, killing the passenger). As such, we affirm Appellant's sentence.

*Judgment affirmed. All the Justices concur.*