**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: November 2, 2023

S23A0686.  REGAN v. THE STATE.

COLVIN, Justice.

Appellant Cody Allen Regan appeals his sentence of 20 years in prison, with one year to serve, for one count of felony child molestation, following his non-negotiated guilty plea.[1]  On appeal,

---

[1] The crime occurred on May 28, 2017.  On September 8, 2017, a Newton County grand jury indicted Appellant for one count of child molestation in violation of OCGA § 16-6-4 (a).  On June 28, 2018, Appellant entered a guilty plea without a plea agreement and filed a motion in arrest of judgment challenging in part the constitutionality of the child molestation statute as applied to him.  On April 30, 2019, the trial court denied his motion in a three-page order that did not address the constitutional claim raised in the motion.  On May 14, 2019, Appellant was sentenced to a term of 20 years in prison, with one year to serve.

Appellant timely filed a notice of appeal directed to the Court of Appeals on June 5, 2019, and subsequently amended it twice to direct his appeal to this Court.  We transferred the case to the Court of Appeals, which vacated the trial court's order denying Appellant's motion in arrest of judgment and directed the trial court to rule on Appellant's constitutional claims.  See *Regan v. State*, 361 Ga. App. 156, 158 (863 SE2d 527) (2021).  On remand, the trial court again denied Appellant's motion in arrest of judgment in an order dated May 4, 2022.  On May 24, 2022, following a hearing, the trial court reimposed Appellant's original felony sentence.  Appellant filed a timely notice of appeal directed to

Appellant argues that he improperly received a felony sentence for child molestation, in violation of his rights to equal protection under the United States and Georgia Constitutions, because he is similarly situated to people receiving misdemeanor sentences for aggravated child molestation. Appellant also argues that his sentence constitutes cruel and unusual punishment, in violation of the United States and Georgia Constitutions, because his sentence is grossly disproportionate to his crime.

For the reasons that follow, we hold that the sentencing scheme for child molestation set out at OCGA § 16-6-4 (b), as applied to Appellant, violated his right to equal protection under the Fourteenth Amendment to the United States Constitution.[2] These

this Court. The case was assigned to our April 2023 term and submitted for a decision on the briefs.

[2] We decline to consider Appellant's equal-protection claim under the Georgia Constitution because neither the parties nor the trial court distinguished Appellant's federal equal-protection claim from his state equal-protection claim and because Appellant does not argue that the federal Equal Protection Clause should be construed differently than the Georgia Equal Protection Clause. See *Harvey v. Merchan*, 311 Ga. 811, 825 n.13 (4) (b) (860 SE2d 561) (2021) (declining to consider the defendant's federal and state equal-protection claims separately where neither the defendant nor the trial court below distinguished between those claims).

sentencing provisions provide for a misdemeanor sentence where the victim is at least 14 years old (among other conditions), but the misdemeanor sentencing provisions for aggravated child molestation provide for a misdemeanor sentence where the victim is at least 13 years old. Compare OCGA § 16-6-4 (b) (2), with 16-6-4 (d) (2). Because the victim in this case was 13 years old, Appellant did not qualify for the misdemeanor sentence he would have received if he had instead committed aggravated child molestation. See id. at (b) (2), (d) (2). There is no rational basis for such disparate treatment. We therefore reverse the trial court's order denying Appellant's motion in arrest of judgment, vacate Appellant's sentence, and remand the case for Appellant to be resentenced for misdemeanor child molestation under OCGA § 16-6-4 (b) (2). Because we resolve Appellant's challenges to his sentence on federal equal-protection grounds, we do not reach his cruel-and-unusual-punishment claims.

1. The facts in this case are uncontested. At the time of the crime, Appellant was 17 years old, and less than four years older

3

than his 13-year-old stepsister, A. M. In the early morning hours of May 28, 2017, Appellant entered the family living room, where he found A. M. asleep on the couch. Appellant then put his penis in A. M.'s hand. When A. M. awoke, Appellant covered himself and went back to his room. A. M. then reported this incident to her mother (Appellant's stepmother). Appellant admitted to his stepmother what he had done to his stepsister, and law enforcement officers were contacted.

2. As an initial matter, the State argues that Appellant failed to properly preserve his constitutional challenges for review because he abandoned his equal-protection claims and waived his cruel-and-unusual punishment claims in the trial court. We disagree with respect to Appellant's federal equal-protection claim, and we do not consider whether Appellant's other constitutional claims were properly preserved because, as explained above, we do not reach the merits of those claims.

A constitutional challenge to a sentencing statute is timely if it was made at the first opportunity. See *Woods v. State*, 279 Ga. 28,

4

29 (1) (608 SE2d 631) (2005) (holding defendant's constitutional challenge to a sentencing statute, which was raised after the verdict but prior to sentencing, was "made at the first opportunity and, therefore, was timely." (citation and punctuation omitted)). Because a challenge to a sentencing statute may not ripen until after the jury returns a guilty verdict or after the defendant enters a guilty plea, such a challenge "should normally be made no later than the sentencing hearing, at a time when corrective action is still possible." *Jones v. State*, 290 Ga. 670, 674 (3) (725 SE2d 236) (2012) (citation and punctuation omitted).

On the same day that Appellant entered his non-negotiated guilty plea, he filed a motion that expressly argued that his sentence violated the Equal Protection Clause of the Fourteenth Amendment. Though his concurrently filed brief did not cite the federal Equal Protection Clause or related decisional law, Appellant argued that the statutory sentencing scheme, see OCGA § 16-6-4 (b) (2), (d) (2) was "incongruous" and unfair, and that "[f]ailing to arrest judgment would result in an impermissible constitutional harm." Moreover,

5

Appellant amply supported his federal equal-protection claim in his supplemental briefing to the trial court prior to re-sentencing, and the State was given adequate notice and opportunity to respond, which it did. See *Woods*, 279 Ga. at 29 (1) (noting that the defendant's constitutional challenge to his sentence, which occurred after the verdict but before sentencing, allowed time for "corrective action" and gave the State "adequate advance notice of the motion and the basis for the constitutional attack . . . ."). Appellant's federal equal-protection claim is also supported by argument and citations to authority in his briefing before this Court. We therefore conclude that Appellant's federal equal-protection claim was timely raised and properly preserved for our review.

Relying on *Sulejman v. Marinello*, 217 Ga. App. 319, 320 (1) (457 SE2d 251) (1995), the State argues that Appellant abandoned his federal equal-protection claim by failing to support it with argument and citations to the Constitution and related equal-protection case law in his initial briefing before the trial court, which was filed at the time of his guilty plea. *Sulejman*, however, is a

6

Court of Appeals case that concerns the appellants' failure to support one of their enumerations of error in their *appellate* briefing, in violation of Court of Appeals Rule 15 (c) (2). See *Sulejman*, 217 Ga. App. at 320 (1) (citation and punctuation omitted). That rule did not apply in the trial court, which is instead governed by the Uniform Superior Court Rules, and those rules do not include an analogous provision. Further, as noted above, Appellant's initial brief-in-support before the trial court elaborates upon the constitutional argument expressly raised in his concurrent motion, albeit obliquely. The State's preservation argument therefore fails.

3. Having determined that we can review Appellant's federal equal-protection claim, we now turn to the merits of Appellant's equal-protection arguments. Appellant contends that he was subject to a felony sentence for child molestation even though he is similarly situated to certain defendants who receive only a misdemeanor sentence for aggravated child molestation. Appellant further argues that there is no rational basis for this discrepancy in the sentencing scheme. Accordingly, he argues that his equal

7

protection rights were violated when he was not sentenced as a defendant would be under OCGA § 16-6-4 (b) (2). For the reasons that follow, we agree.

(a) OCGA § 16-6-4 defines both child molestation and aggravated child molestation. As relevant here, child molestation occurs when "[a] person . . . [d]oes an immoral or indecent act to . . . any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of . . . the person." OCGA § 16-6-4 (a) (1). The Criminal Code defines aggravated child molestation as an act of child molestation which also "physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c). Sodomy, in turn, occurs when a person "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). Persons convicted of aggravated child molestation have, by definition, also committed the offense of simple child molestation. See *Dixon v. State*, 278 Ga. 4, 7 (2) (596 SE2d 147) (2004) ("[S]imple child molestation is a necessary element of aggravated child molestation, so . . . the State cannot reach

8

aggravated child molestation without first proving that [the defendant] is guilty of simple child molestation." (citation and punctuation omitted)).

Generally, a first offense of child molestation is punishable by imprisonment for a term of five to 20 years, whereas a first offense of aggravated child molestation is punishable by either imprisonment for life or by imprisonment for a term of at least 25 years followed by probation for life. Compare OCGA § 16-6-4 (b) (1), with OCGA § 16-6-4 (d) (1).

These felony sentences do not apply, however, in certain cases where the offender is 18 years of age or younger and the additional conditions set forth in the applicable misdemeanor sentencing provisions are met. OCGA § 16-6-4 (b) (2), (d) (2). Specifically, the misdemeanor sentencing provisions for child molestation apply when the victim is at least 14 years old, the defendant is 18 years of age or younger, and the defendant is no more than four years older than the victim. See OCGA § 16-6-4 (b) (2). The misdemeanor sentencing provisions for aggravated child molestation are similar

but contain two key differences: they apply when the victim is at least 13 years old — rather than 14 years old — and the "basis of the charge . . . involves an act of sodomy." OCGA § 16-6-4 (d) (2) (A), (C). Thus, under these sentencing provisions, a 17-year-old defendant may receive a misdemeanor sentence for committing aggravated child molestation against a 13-year-old victim but may not receive a misdemeanor sentence for committing child molestation against the same victim.[3]

OCGA § 16-6-4's statutory scheme reveals two legislative determinations made by the General Assembly. First, acts of child molestation involving sodomy generally warrant more punishment than those not involving sodomy. This determination is evident from the definitions of the offenses themselves and the sentences prescribed. See OCGA § 16-6-4. Second, the misdemeanor sentencing provisions found in OCGA § 16-6-4 (b) (2) and (d) (2)

---

[3] The sentencing provisions found in OCGA § 16-6-4 (b) (2) and (d) (2) are mandatory: under both provisions, the defendant "shall" receive a misdemeanor sentence if the respective statutory requirements are met.

reveal the General Assembly's determination that acts of child molestation are less deserving of punishment when the defendant and the victim are within the prescribed age ranges than when the same acts are committed by an older defendant or against a younger victim: when the defendant is older than 18 years of age or the victim is younger than 13 years of age, both child molestation and aggravated child molestation are felony offenses. See OCGA § 16-6-4 (b), (d); Ga. L. 2006, p. 379, § 11 (amending OCGA § 16-6-4 to add misdemeanor sentencing provisions, among other changes).

(b) The Fourteenth Amendment to the United States Constitution provides in relevant part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, Sec. 1. "An equal protection challenge to a criminal statute is examined under the rational basis test" if, as here, the statute does not "discriminate[ ] on racial grounds or against a suspect class." *Session v. State*, 316 Ga. 179, 190 (3) (b) (887 SE2d 317) (2023) (citation and punctuation omitted). Because legislation is presumptively constitutional, the claimant carries the

11

burden of proving that a statute is unconstitutional.  See id. at 191 (4) (citation and punctuation omitted).  To carry that burden in the equal-protection context, the claimant must demonstrate that "he is similarly situated to members of the class who are treated differently from him" and that "there is no rational basis for such different treatment."  Id. at 190 (3) (b) (citation and punctuation omitted).

In requiring that similarly situated persons be treated alike, the Fourteenth Amendment's Equal Protection Clause forbids "all classifications that are 'arbitrary or irrational.'"  *Glenn v. Brumby*, 663 F3d 1312, 1315 (I) (11th Cir. 2011) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446-447 (105 SCt 3249, 87 LE2d 313) (1985)).  See *Stegall v. Leader Nat. Ins. Co.*, 256 Ga. 765, 766 (5) (353 SE2d 484) (1987) ("The equal protection clauses of the federal and state constitutions prohibit the state from creating a classification which arbitrarily divides similarly situated citizens into different classes and treats them differently." (citation and punctuation omitted)).  See also *State v. Holland*, 308 Ga. 412, 414

(1) (841 SE2d 723) (2020) ("Where a criminal statute does not discriminate on racial grounds or against a suspect class, equal protection . . . concerns are satisfied if the statute bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory." (citation and punctuation omitted)). "Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid [all] classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (II) (112 SCt 2326, 120 LE2d 1) (1992) (citation and punctuation omitted). It simply forbids those classifications that fail to "promote a legitimate state purpose." *Williams v. Vermont*, 472 U.S. 14, 23 (III) (105 SCt 2465, 86 LE2d 11) (1985) (citation and punctuation omitted). See *C & S Nat. Bank v. Mann*, 234 Ga. 884, 887 (2) (218 SE2d 593) (1975) ("[T]he equal protection clause of the Constitution allows classification by legislation when and only when the basis of such classification bears a direct and real relation to the object or purpose of the legislation . . . ." (citations and punctuation omitted)). In doing so, the Equal Protection Clause "keeps governmental decisionmakers

13

from treating differently persons who are in all *relevant* respects alike." *Nordlinger*, 505 U.S. 1, at 10 (II) (citation and punctuation omitted; emphasis supplied).

Given this analytical framework and the particular facts of Appellant's as-applied constitutional challenge, we must consider whether Appellant, who was 17 years old at the time of the offense and received a felony sentence for child molestation against a 13-year-old victim, is similarly situated in "all relevant respects" to the comparison class of defendants who have received misdemeanor sentences for aggravated child molestation against a victim of the same age. *Nordlinger*, 505 U.S. at 10 (II).

Both Appellant and members of the comparison class have committed the underlying offense of child molestation. See *Dixon* 278 Ga. at 7 (2). Additionally, both Appellant and members of the comparison class have satisfied the conditions set forth in two of the three subparagraphs of the misdemeanor sentencing provisions for aggravated child molestation: the victim in both instances is "at least 13," OCGA § 16-6-4 (d) (2) (A), and the defendant in both

instances is "18 years of age or younger and is no more than four years older than the victim," id. at § 16-6-4 (d) (2) (B). The only difference between Appellant and members of the comparison class is that the basis for Appellant's charge of child molestation did not "involve[ ] an act of sodomy." Id. at § 16-6-4 (d) (2) (C). Whether the commission of an act of sodomy is a relevant difference between Appellant and members of the comparison class turns on whether the classification scheme drawn by the General Assembly concerning acts of sodomy "promote[s] a legitimate state purpose" such that those classifications are neither arbitrary nor irrational. *Williams*, 472 U.S. at 23 (III) (citation and punctuation omitted). See also *Holland*, 308 Ga. at 414 (1).

As a general matter, it is not arbitrary or irrational to classify acts of child molestation involving sodomy differently than those that do not and to punish child molesters differently based on whether or not they engaged in sodomy with their victims. See *Glenn*, 663 F3d at 1315 (I) (holding that the Equal Protection Clause forbids classifications that are "arbitrary or irrational" (citation and

punctuation omitted)). Indeed, the General Assembly is at liberty to determine that acts of molestation involving sodomy are worse than acts of molestation that do not and to prescribe different crimes and punishments based on this distinction. See *Rooney v. State*, 287 Ga. 1, 6 (3) (690 SE2d 804) (2010) ("Traditionally, it is the task of the legislature . . . to define crimes and set the range of sentences." (citation and punctuation omitted)). To that end, the *felony* sentencing scheme found in OCGA § 16-6-4 (d) (1) promotes Georgia's legitimate interest in deterring acts of child molestation involving sodomy by punishing such acts more harshly than acts of simple child molestation. Compare OCGA § 16-6-4 (b) (1), with OCGA § 16-6-4 (d) (1).

Generally speaking, the General Assembly also has a rational basis for classifying acts of child molestation based on the ages of the defendant and the victim and the difference in age between them. As a general matter, both of the misdemeanor provisions found in OCGA § 16-6-4 serve a proper legislative purpose insofar as they reduce to a misdemeanor the punishment for certain sex acts

16

between teenagers within the prescribed age ranges who are less than four years apart. See OCGA § 16-6-4 (b) (2), (d) (2).

Here, however, we are faced with a unique set of circumstances that forces us to ask whether the otherwise generally sound classification scheme found in OCGA § 16-6-4 remains rational when applied to Appellant. As noted above, the General Assembly has identified sodomy as one type of conduct that elevates the offense of child molestation to aggravated child molestation, thereby subjecting persons found to have engaged in such conduct to more severe sentences. See OCGA § 16-6-4 (c), (d) (1). With respect to the misdemeanor sentencing provisions, however, the General Assembly has identified sodomy as the type of conduct that reduces the offense of aggravated child molestation from a felony to a misdemeanor when the victim and the defendant are within the given age ranges. See id. at § 16-6-4 (d) (2). This contrast, in itself, is not necessarily problematic. An issue arises only because the victim-age-thresholds in the statute's two misdemeanor provisions are different: misdemeanor child molestation requires that the

17

victim be "at least 14" years old, but misdemeanor aggravated child molestation only requires that the victim be "at least 13" years old. Id. at § 16-6-4 (b) (2), (d) (2) (A). This statutory scheme allows for the very particular circumstance in which Appellant finds himself: because Appellant molested a 13-year-old victim, he was sentenced to a more severe punishment than persons committing the aggravated version of the same offense against a victim of the same age, precisely because Appellant did *not* engage in the conduct (i.e., sodomy) that makes the offense aggravated.

When applied to Appellant, OCGA § 16-6-4's statutory scheme operates in a way directly at odds with its otherwise legitimate purposes. Appellant did not engage in sodomy, but he is punished more harshly than members of the comparison class that did. Appellant was 18 years of age or younger, and less than four years older than his 13-year-old victim, but his sentence was not reduced to a misdemeanor. The fact that Appellant's sentence would have been so reduced if he had touched the victim's mouth with his penis (and thereby committed an act of aggravated child molestation

18

involving sodomy) rather than her hand (and thus committed simple child molestation) is not only inconsistent with those legitimate legislative purposes that we have identified above but also directly contradicts them. And such a classification scheme promotes no other proper legislative purpose that we can discern.[4] Thus, the fact that Appellant did not commit sodomy cannot be a relevant difference between Appellant and the comparison class that renders them dissimilarly situated and that warrants a difference in treatment.

(c) The State argues that the misdemeanor sentencing provisions for aggravated child molestation are rational because

---

[4] Contrary to the dissenting opinion, we need not substitute our judgment for that of the General Assembly to determine that Appellant has received a more severe sentence than members of the comparison class for a less culpable offense. Dissent at 48 (c) ("[N]othing in the Equal Protection Clause . . . allow[s] courts to supersede legislative judgment about which crimes should result in harsher penalties." (citations and punctuation omitted)). While it would be inappropriate to cast our gaze across the Criminal Code to ensure it provides a scheme of punishment proportional to our own perceived hierarchy of criminal offenses, we need not and do not exercise such judgment here: when making this determination, we rely entirely on the General Assembly's definitions of child molestation and aggravated child molestation and its designation of one offense as the aggravated version of the other. See OCGA § 16-6-4 (a), (c).

they prescribe a reduced sentence for teenagers who engage in consensual sodomy, and teenagers engaging in consensual sex acts are less deserving of punishment than Appellant, who engaged in non-consensual acts. The victim's lack of consent, however, is an element of neither child molestation nor aggravated child molestation. See OCGA § 16-6-4 (a), (c). Indeed, Appellant would remain ineligible for a misdemeanor sentence even if his victim's participation had been voluntary, which it was not. In other words, the challenged classification here does not draw any line between "consensual" acts and nonconsensual acts: under the statute, if the victim is 13 years old, simple child molestation is a felony regardless of whether the victim engaged in the conduct consensually. And the State offers no reason at all to believe that the conduct that comprises felony simple child molestation is somehow any less likely to be voluntary than the conduct involving sodomy that is classified as misdemeanor aggravated child molestation. Moreover, even assuming that there was such a reason, it would not explain why the victim-age-threshold for misdemeanor aggravated child molestation

is 13 years of age, but the victim-age-threshold for misdemeanor child molestation is 14 years of age. Accordingly, the State's argument fails.

Nor can we see any other rational basis for prescribing misdemeanor sentences for the aggravated child molestation of 13-year-old victims, while also prescribing felony sentences for simple child molestation of 13-year-old victims. As explained above, permitting persons convicted of aggravated child molestation to receive misdemeanor sentences while requiring a harsher felony sentence for a defendant who is alike in all other respects except that he did *not* engage in sodomy directly conflicts with the otherwise legitimate purpose of the statutory scheme: punishing child molestation involving sodomy more harshly. It is not rational to use an act of sodomy to justify both a harsher felony sentence generally and a more lenient misdemeanor sentence under the particular facts at issue here, where the victim is between 13 and 14 years old.

(d) The dissenting opinion takes issue with both our similarly-

situated analysis and our rational basis analysis, but its arguments fail in both regards.

The dissenting opinion claims that Appellant is not similarly situated to members of the comparison class because he was convicted under a materially different statutory provision and because he did not commit an act of child molestation involving sodomy. See Dissent at 42, 45 (b). As the dissenting opinion notes, these two differences are closely intertwined: Appellant was convicted under a different statutory provision than members of the comparison class precisely because of his different conduct. See id. at 45 (b). We disagree, however, with the dissenting opinion's assertion that the presence or lack of sodomy is always material. For the reasons described above, whether Appellant's particular act of child molestation involved sodomy is not a relevant difference that renders him differently situated than a person in the comparison class, even if it would be a germane fact in determining that persons convicted of child molestation and persons convicted of aggravated child molestation are not similarly situated in other contexts. Here,

Appellant committed simple child molestation but received a more severe punishment than the aggravated version of the same offense because he did *not* engage in the type of behavior that makes the offense aggravated. Under these narrow circumstances, whether or not the basis of Appellant's charge involved an act of sodomy does not make him differently situated than a person in the comparison class who receives a misdemeanor sentence for aggravated child molestation against a victim of the same age.

With respect to our similarly-situated analysis, the dissenting opinion also takes issue with the fact that we appear to do something not done previously, namely rule in favor of a claimant "on an as-applied equal-protection challenge to his sentence by comparing his conduct to a hypothetical defendant's different conduct, or by comparing what Appellant actually did to what he might have done differently." Dissent at 40 n.9 (b). Though we have not cited cases where we have engaged in this exact type of analysis previously, the dissenting opinion also fails to identify cases in opposition where a claimant has been subject to a statute that prescribes a more severe

punishment for certain instances of a simple offense than the aggravated version of the same offense based only on the omission of the conduct that makes the offense aggravated.[5] This appears to be the first time that we have encountered the coupling of the precise

---

[5] Footnote 2 of the dissenting opinion lists numerous citations to support the proposition that "the great weight of authority" rejects prior as-applied equal-protection challenges "comparing [a defendant's] conduct to a hypothetical defendant's different conduct." Dissent at 40 n.9 (b). Most of these cases bear no resemblance to this one. The one most similar to the facts here appears to be *U.S. v. Hughes*, 632 F3d 956 (6th Cir. 2011). There, the defendant pleaded guilty to one count of attempting to entice a minor to engage in a criminal sexual act, in violation of 18 USC § 2422 (b). See *Hughes*, 632 F3d at 958. The defendant in *Hughes* alleged that his mandatory minimum sentence of ten years in prison violated his due process and equal protection rights under the Fifth Amendment to the United States Constitution because persons convicted of the similar offense of transporting minors with intent to engage in illicit sexual conduct in violation 18 USC § 2423 (b) are not subject to a mandatory minimum sentence. See id. The defendant argued that if he had driven out of state to meet the minor, rather than to a location within his home state, he would have been charged with violating 18 USC § 2423 (b) and therefore avoided the imposition of his mandatory minimum sentence. See id. at 961 (II) (B). The *Hughes* court concluded that the defendant's argument failed because he "is not similarly situated to the *theoretical* defendant who commits a violation of § 2423(b)." Id. (emphasis in the original). The court's issue was not with the defendant's use of theoretical defendants as comparison class, but the fact that the crime for which defendant was convicted included an element that the comparison crime did not. See id. Though the *Hughes* case appears to bear a superficial similarity to the case here at first glance, this closer look reveals that it does not apply. The statutory provisions at issue in *Hughes* did not involve the simple and aggravated versions of the same offense, as they do here. Unlike the instant case, where the elements of the statute under which Appellant was charged (i.e., child molestation) are included in the statute to which the comparison class is subject (i.e., aggravated child molestation), the two offenses in *Hughes* were separate.

nature of Appellant's crime with the particular oddities of a statute such as this one.

The dissenting opinion's rational basis argument also fails. The dissenting opinion begins by pointing out that an appellant can mount a successful equal-protection argument even if members of the comparison class are not charged with the same offense. See Dissent at 36 (a) ("In my view, where we have only required as essential to an equal-protection claim that a criminal defendant be charged with the identical offense as someone enjoying more favorable treatment, we have missed the mark."). But the dissenting opinion later faults Appellant for failing to confine his analysis to the statutory provision under which he was charged and sentenced, and for instead comparing this provision to a "wholly separate provision." Id., at 51 (c). See also id. at 50 (c) ("Rational basis review, however, does not require one provision of a law to be rationally related to another provision; it requires the challenged law to be rationally related to a legitimate government interest." (citations and punctuation omitted)). In faulting Appellant in this

manner, the dissenting opinion subjects Appellant to the very bright-line rule from which it sought to distance itself initially. This analysis is not only internally inconsistent, it is also incorrect: as-applied equal-protection claims necessarily involve comparisons between members of the different groups created by a classification scheme, whether created by one or more statutory provisions, and we are required to consider whether there is a rational basis for any resulting difference in treatment between similarly-situated members of such groups.[6] Because the dissenting opinion frames the types of comparisons that can be made in viable equal-protection challenges too narrowly, it misses the mark.

The dissenting opinion further argues that there is a rational basis for OCGA § 16-6-4's statutory scheme. Because the General Assembly prescribed stern penalties for felony aggravated child

---

[6] We do not contend that any apparent inconsistency in sentencing between different statutes necessarily indicates that the General Assembly acted without a rational basis. But see Dissent at 50 (c). Rather, here, we have examined the classification scheme present in a single statute as it applies to Appellant under the particular facts of his case to see if the sentencing prescribed by the General Assembly lacks a rational basis as applied to him.

26

molestation, the dissenting opinion argues, it also had a legitimate interest in crafting misdemeanor exceptions which ensure that "youthful defendants who engage in acts of sodomy will not be subject to the law's harshest consequences." Dissent at 53 (c). See also OCGA §§ 16-6-4 (b), (d); 17-10-6.1; 17-10-6.2. On this point, we agree: as we previously noted in Section 3 (b), *supra*, OCGA § 16-6-4's misdemeanor sentencing provisions generally serve a legitimate governmental purpose insofar as they reduce sentences for youthful defendants when the age-related conditions for the defendant and the victim are met. See OCGA § 16-6-4 (b) (2), (d) (2). But in identifying this purpose, the dissenting opinion does little to explain why the misdemeanor provisions for aggravated child molestation apply when the victim is at least 13 years old, but the misdemeanor provisions for child molestation require that the victim be at least 14 years old. See id.; Ga. L. 2006, p. 379, § 11 (amending OCGA § 16-6-4 to add misdemeanor sentencing provisions for child molestation and aggravated child molestation, among other changes). Because the dissenting opinion fails to

27

adequately explain this discrepancy and thereby fails to supply a rational basis for the statutory scheme, we remain unpersuaded.

4. Because Appellant is similarly situated to persons receiving misdemeanor sentences for aggravated child molestation against a 13-year-old victim and because the higher age threshold for misdemeanor child molestation bears no reasonable relation to a proper legislative purpose, we conclude that the sentencing scheme for child molestation set out at OCGA § 16-6-4 (b), as applied to Appellant, violated his right to equal protection under the Fourteenth Amendment to the United States Constitution. Accordingly, we reverse the trial court's denial of Appellant's motion in arrest of judgment, vacate Appellant's sentence, and remand for the trial court to resentence Appellant for child molestation under OCGA § 16-6-4 (b) (2) rather than under OCGA § 16-6-4 (b) (1).

*Judgment reversed, sentence vacated, and case remanded for resentencing. All the Justices concur, except Bethel and LaGrua, JJ., who dissent.*

28

PINSON, Justice, concurring.

I agree with the Court's narrow holding that the sentencing provisions of OCGA § 16-6-4 (b) (2), as applied to the defendant here, violate his right to equal protection under the Fourteenth Amendment to the United States Constitution. I write separately only to note that I do not understand federal equal protection analysis to require a separate, threshold determination whether a claimant is "similarly situated" to members of the class who are treated differently from him. In many equal protection decisions, the United States Supreme Court does not even use the phrase "similarly situated," see, e.g., *Romer v. Evans*, 517 U.S. 620, 631 (116 S. Ct. 1620, 1627, 134 LE2d 855) (1996) (in setting out the standard for assessing an equal protection claim subject to rational basis review, stating only that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end"), and when it does, it is a mere restatement of what the Equal Protection Clause requires as a general matter, not a

29

separate or threshold test. See, e.g., *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (105 S. Ct. 3249, 3254, 87 LE2d 313) (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."); *Plyler v. Doe*, 457 U.S. 202, 216 (102 S. Ct. 2382, 72 LE2d 786) (1982) ("The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'").

And logically, we cannot reject a federal equal protection claim based *merely* on a conclusion that some characteristic distinguishes the claimant from the group that the government is treating differently. Even under rational basis review, the ultimate question is whether the government has a legitimate (i.e., not arbitrary) reason for treating the claimant differently. See, e.g., *Rinaldi v. Yeager*, 384 U.S. 305, 308-309 (86 S. Ct. 1497, 16 LE2d 577) (1966) ("The Equal Protection Clause . . . imposes a requirement of some rationality in the nature of the class singled out…. [L]egislation may

impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" (citations omitted)). So if some characteristic distinguishes the claimant from the group, that's not the *end* of the inquiry—we still have to determine whether that characteristic is a legitimate basis for the different treatment. And if not, the proper conclusion is that the classification lacks a rational basis, not that the claimant *loses* because he is not "similarly situated." On the other hand, if that characteristic *is* a legitimate basis for the different treatment, that's just another way of saying that there is a rational basis for the government's classification. In short, the "similarly situated" question may help isolate the possible factual bases for the claimant's different treatment compared to the comparison group, particularly in an as-applied challenge where the basis for a classification does not appear expressly on the face of a

31

statute. But the similarly-situated step is not an independent basis for rejecting an equal protection claim.

I understand the Court's opinion to be consistent with this view. Although the Court assesses whether the defendant here is "similarly situated" to the group he identifies as receiving better treatment than himself, we frame that question as whether he is similarly situated "in all relevant respects," and we explain that whether the distinguishing characteristic here is a "relevant difference" turns on whether treating the defendant differently based on that distinguishing characteristic "promote[s] a legitimate state purpose." Slip Op. at 15. In my view, that's just rational basis review using different words, as the balance of the Court's analysis shows. [7]

_____

[7] Because the Court concludes that the defendant here is similarly situated and that the classification as applied to him violated his right to equal protection of the laws, we need not decide what to do with this Court's decisions that reject federal equal protection claims based on a preliminary determination that the claimant was not "similarly situated" without addressing whether there was a rational basis for treating the claimant differently. See, e.g. *Drew v. State*, 285 Ga. 848 (684 SE2d 608) (2009). That said, in a future case we may need to consider whether that approach conflicts with U.S. Supreme Court precedent. In that vein, I note that at least some of

With this understanding, I join the Court's opinion.

I am authorized to state that Presiding Justice Peterson, Justice Warren, and Justice McMillian join in this concurrence.

---

our decisions taking that approach can be traced back to decisions from the U.S. Court of Appeals for the Eleventh Circuit that are not grounded in U.S. Supreme Court precedent. See, e.g., *Stuart-James Co. v. Tanner*, 259 Ga. 289, 290 (380 SE2d 257) (1989) (citing *Price v. Tanner*, 855 F.2d 820 (11th Cir. 1988) for the proposition that an equal protection claim is analyzed under a "two-prong" test which requires "as a 'preliminary step' a determination of 'whether persons who are similarly situated are subject to disparate treatment'" and holding that the claimants had not met their "threshold obligation" to show they are similarly situated to the comparator group (citations omitted)). See also *Price*, 855 F.2d at 822 (citing Circuit precedent for the idea that "[a]n equal protection analysis…requires as a 'preliminary step' a determination of 'whether persons who are similarly situated are subject to disparate treatment.'" (citations omitted). Accord *Jones v. State*, 307 Ga. 505, 507-508 (837 SE2d 288) (2019) (analyzing only the "first prong" of the equal protection analysis); *Reed v. State*, 264 Ga. 466, 466-467 (488 SE2d 189) (1998) ("Since Reed failed to satisfy the threshold obligation in his equal protection challenge, we do not consider whether the statute is rationally related to a legitimate state interest."); *Sims v. State*, 260 Ga. 782, 782-783 (399 SE2d 924) (1991) ("To successfully launch an equal protection attack on a statutory provision, a claimant must initially show that he is similarly situated to members of the class who are treated differently from him.").

BETHEL, Justice, dissenting.

Because I believe Appellant's sentence is due to be affirmed, I respectfully dissent. I agree with the majority's description of the proper test to be applied to Appellant's equal-protection claim. I believe, however, that the majority has identified an incorrect theoretical comparator for that analysis. For what appears to be the first time anywhere, the majority upholds an equal-protection claim by referencing a theoretical defendant whose crime requires proof of at least one act more than the act(s) committed by the person raising the equal protection claim. Because Appellant is not treated less favorably than any individual he has identified or theorized who engaged in the same conduct, his equal-protection claim fails.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons *similarly situated* should be treated alike." (Citation and punctuation omitted; emphasis supplied.) *City of Cleburne v. Cleburne Living Ctr.*, 473 U. S. 432, 439 (II) (105 SCt

3249, 87 LE2d 313) (1985). To succeed on an equal-protection challenge, the claimant must demonstrate that he has been treated differently from similarly situated persons.[8] And as the majority correctly recognizes, persons are similarly situated for equal-protection purposes if they are alike "in all *relevant* respects." (Emphasis in original.) Maj. Op. at 14 (3) (b).

(a) I begin with a point of certainty. When this Court has had occasion to consider equal-protection claims arising from allegedly disparate sentencing schemes, we have consistently held that "criminal defendants are similarly situated if they are charged with the same crime." *Session v. State*, 316 Ga. 179, 189-190 (3) (b) (887 SE2d 317) (2023). See also *State v. Holland*, 308 Ga. 412, 416 (2) (841 SE2d 723) (2020); *Jones v. State*, 307 Ga. 505, 507-508 (2) (a) (837 SE2d 288) (2019); *Pitts v. State*, 293 Ga. 511, 516 (2) (748 SE2d

---

[8] When an as-applied petitioner does not claim differential treatment based on membership in a suspect class, the petitioner must also establish that there is no rational basis for his individualized differential treatment. See *Jones v. State*, 307 Ga. 505, 507-508 (2) (a) (837 SE2d 288) (2019). Whether this is a two-part inquiry or part-in-parcel with the similarly situated inquiry, a claimant has the burden of proof as to the inquiry. See id.

426) (2013); *Drew v. State*, 285 Ga. 848, 850 (2) (684 SE2d 608) (2009); *Hardin v. State*, 277 Ga. 242, 243 (2) (587 SE2d 634) (2003); *Young v. State*, 275 Ga. 309, 309-310 (1) (565 SE2d 814) (2002); *State v. Jackson*, 271 Ga. 5, 5-6 (515 SE2d 386) (1999). Our analysis in these cases suggests that, as a general proposition or even as an absolute requirement, an appellant must have been charged with the same offense as those criminal defendants with whom he contended he was similarly situated.

To the extent this line of cases suggests an absolute requirement that a claim be based on a comparator charged with the same crime, I view it as in tension with the broader rule relied upon by the majority, which requires courts to determine whether a defendant and a given comparator are (or are not) similarly situated in all relevant respects. In my view, where we have only required as essential to an equal-protection claim that a criminal defendant be charged with the identical offense as someone enjoying more favorable treatment, we have missed the mark. On this point, the majority and I agree. Indeed, our recognition here of the proper "all

36

relevant respects" standard should serve to redirect future analysis away from the static rule suggested by some of our precedent and properly toward a more comprehensive inquiry.

(b) My disagreement with the majority arises not from the standard it has applied, but from the way in which it applies that standard. The majority concludes that Appellant, who was convicted of child molestation and sentenced for a felony under OCGA § 16-6-4 (a) (1) and (b) (1), is similarly situated to a theoretical defendant who was convicted of aggravated child molestation based on sodomy and sentenced for a misdemeanor under OCGA § 16-6-4 (c) and (d) (2). The majority has centered its analysis — incorrectly, in my view — on the similarities of the statutory elements of child molestation and aggravated child molestation, rather than on the actual facts of Appellant's case. And because of this misplaced focus, the majority overlooks two controlling points of comparison that lead me to conclude that Appellant is not similarly situated with the comparative group. Turning first to the majority's analytical framework,  by training its focus solely on the statutory elements of

37

the crimes, the majority functionally treats Appellant's claim as a facial challenge to the sentencing scheme but does not extend its analysis to consider whether the statute would be unconstitutional in all circumstances, as a proper facial analysis should. See *Bucklew v. Precythe*, ___ U. S. ___ (II) (B) (139 SCt 1112, 1127, 203 LEd2d 521) (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications.").

Appellant's claim, however, is not a facial challenge. He instead challenges the sentencing scheme as it applies to him under the facts of his particular case. See *Jones*, 307 Ga. at 509 (2) (b) ("An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." (punctuation omitted)). Because Appellant has raised an as-applied equal-protection challenge to his sentence, he can prevail only by showing, from his own identifying characteristics or his actual conduct, that the government treated him differently based on his membership in a suspect class, or that the government arbitrarily singled him out for harsher punishment than persons

38

who engaged in his same conduct. See, e.g., *Engquist v. Or. Dept. of Agric.*, 553 U. S. 591, 601 (II) (B) (128 SCt 2146, 170 LEd2d 975) (2008) (explaining that, when an equal-protection challenger is not a member of a suspect class, his claim nevertheless may be sustained where he has been "irrationally singled out as a so-called 'class of one'"); *United States v. Batchelder*, 442 U. S. 114, 124-25 (III) (B) (99 SCt 2198, 60 LEd2d 755) (1979) (holding that, absent evidence of selective enforcement based on a prohibited classification, defendant's right to equal protection was not violated where he was prosecuted under a law with harsher penalties than another law under which he also could have been prosecuted); *Campbell v. Rainbow City*, 434 F3d 1306, 1314 (II) (C) (11th Cir. 2006) (An equal-protection challenge will fail where the claimant, who must prove that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment," does not make the "necessary showing of ill will or discriminatory purpose.").

While we must apply the same "all relevant respects" inquiry

39

to both facial and as-applied challenges, see *Bucklew*, 139 SCt at 1127 (II) (B) ("[C]lassifying a lawsuit as facial or as-applied . . . does not speak at all to the substantive rule of law necessary to establish a constitutional violation[.]"), the analysis each requires is necessarily distinct. Here, our analysis of Appellant's as-applied challenge must focus on the actual facts of Appellant's case, not the elements of two different statutory provisions, nor the facts as they might have been had Appellant acted differently, and certainly not the facts of a hypothetical defendant's case.[9] In other words, the

---

[9] Neither Appellant nor the majority have cited, and I have been unable to find, any decisional authority in which a claimant has prevailed on an as-applied equal-protection challenge to his sentence by comparing his conduct to a hypothetical defendant's different conduct, or by comparing what Appellant actually did to what he might have done differently. While the absence of such authority does not disprove the possibility that such a claim may be successful, the great weight of authority rejecting all such prior attempts gives me pause. See, e.g., *Mitchell v. Morton County*, 28 F4th 888, 902 (II) (B) (3) (8th Cir. 2022) ("[A]n equal protection violation cannot be founded on theoretical possibilities."); *Carney v. Okla. Dept. of Pub. Safety*, 875 F3d 1347, 1353 (D) (10th Cir. 2017) (holding that equal-protection claim failed because defendant could not prove that he was treated differently than persons convicted of the same crime); *Hughes*, 632 F3d at 961 (II) (B) (holding that defendant was not similarly situated to a "theoretical defendant" who violated a different law because he "commit[ted] separate crimes encompassing different elements," and insofar that the defendant "claim[ed] an equal protection violation because he was similarly situated to actual defendants prosecuted under [one law], [but] who in fact committed all the elements of [another law], that is a claim

proper inquiry is whether the actual facts of Appellant's case show

---

for selective prosecution"); *United States v. Hancock*, 231 F3d 557, 566 (III) (A) (2) (9th Cir. 2000) (finding no equal-protection violation despite fact that a statute could, in some hypothetical circumstances, "treat [] misdemeanants more harshly than it treats some felons"); *United States v. Carroll*, 110 F3d 457, 461 (II) (7th Cir. 1997) (Because sentencing schemes "will necessarily involve line-drawing likely to be offensive to the defendant who just misses the cutoff," to prevail on an equal-protection challenge, a defendant "must do more than suggest a different line-drawing technique" by suggesting a hypothetical which "favors his situation."); *State v. McEnroe*, 309 P3d 428, 435 (IV) (Wa. 2013) (explaining that engaging in hypotheticals for purposes of equal-protection analysis "unrealistically assumes that there are two identical crimes and two identical defendants and thereby forecloses the possibility of an individualized assessment by asking us to assume everything is equal" and, therefore, "does not illustrate a realistic equal protection violation but demonstrates exactly why we require individualized determinations from our prosecuting attorneys"); *State v. Taylor*, 939 P2d 904, 908 (II) (Kan. 1997) (holding that "speculation as to what sentencing outcomes multiple defendants could face in hypothetical situations" was "insufficient to raise a denial of equal protection claim"); *State v. Sandifer*, 679 So2d 1324, 1333 (La. 1996) (Because defendant was not being prosecuted for a theoretical crime under a different statute, "he had no standing to raise [an] equal protection claim."); *State v. O'Connor*, 194 NW2d 246, 250 (S.D. 1972) (refusing to reverse conviction based "on the hypothetical contention that conceivably two persons under like circumstances could be charged with different offenses arising out of the same circumstances"). See also *Del Marcelle v. Brown County Corp.*, 680 F3d 887, 897-898 (7th Cir. 2012) (Posner, J.) (explaining that "[c]lass-of-one claims cannot be interposed as defenses to criminal prosecutions, convictions, or sentences" because "[t]here would be chaos if persons charged with crime could base a defense on the ground that a similarly situated criminal suspect had not been charged, or if a person convicted of crime could knock out his sentence by showing that a similarly situated criminal had received a more lenient sentence"). Compare with *People v. Montoya*, 582 P2d 673 (Colo. 1978), and *Smith v. People*, 852 P2d 420 (Colo. 1993), which support the proposition that an equal-protection claim can successfully challenge a sentencing scheme providing a more severe punishment for a less culpable mental state connected to identical conduct.

that he, in fact, is similarly situated "in all relevant respects" with the comparative group. See *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F3d 1274, 1285 (11th Cir. 2021) ("[W]e apply the 'similarly situated' requirement with rigor" and, as such, the comparators "must be prima facie identical in all relevant respects." (citation omitted)); *Douglas Asphalt Co. v. Qore, Inc.*, 541 F3d 1269, 1275 (11th Cir. 2008) (holding that an equal-protection petitioner must be "similarly situated in light of all [relevant] factors" with the comparative group). Applying this inquiry, I conclude that at least two points of comparison control and, thus, that Appellant is not similarly situated to the proposed comparative group.

First, Appellant and the comparators here were convicted under materially different statutory provisions. At the time of sentencing,[10] Appellant had pleaded guilty to the offense of child

---

[10] The relevant time frame for purposes of determining whether Appellant is similarly situated to the comparative group is at the sentencing stage. See *United States v. Green*, 654 F3d 637, 651 (III) (B) (2) (6th Cir. 2011) ("[B]ecause [appellant] appears to raise an equal protection claim based on the government's charging decision, he must prove that he was similarly situated to [the comparators] at the charging stage."); *Moore*, 543 F3d 897 (II) (analyzing equal-protection challenge at charging and sentencing stages).

molestation under OCGA § 16-6-4 (a) (1), whereas members of the comparator group were convicted of aggravated child molestation based on an act of sodomy under OCGA § 16-6-4 (c). These statutory provisions define separate crimes that proscribe different acts, with subsection (c) covering the specific act of sodomy and subsection (a) (1) covering the broader "immoral or indecent act to or in the presence of or with" a child. While not a sufficient basis on its own to conclude that Appellant and the comparative group are not similarly situated, the fact that they were convicted of different crimes is certainly relevant to the analysis. See *United States v. Hughes*, 632 F3d 956, 960-961 (II) (B) (6th Cir. 2011) (concluding that defendant was not "similarly situated to the *theoretical* defendant who commits a violation [of a different statute] because they commit separate crimes encompassing separate elements" (emphasis in original)); *United States v. Nagel*, 559 F3d 756, 760 (II) (A) (7th Cir. 2009) ("[C]riminal defendants who violate [one statute] are not similarly situated for sentencing purposes with criminal defendants who violate" a different statute. "An equal protection

43

violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals." (citation and punctuation omitted)).

Appellant is further distinguished from the comparator group by the facts underlying his conviction.[11] At Appellant's plea hearing, the court required the State to provide the factual basis for Appellant's guilty plea. The prosecutor stated as follows: the victim "had been asleep on the couch in the living room when she woke up

---

[11] Curiously, the majority suggests that my analysis is limited to the elements of the criminal offenses in question and that my analysis is too "narrow" in assessing what points of comparison are properly considered in a "viable" equal-protection claim. Maj. Op. at 25-26 (3) (d). On the contrary, my view of what considerations may be a part of a viable claim is quite broad. Nevertheless, that consideration terminates upon the finding of a material difference between the Appellant's conduct and that of the comparator he wishes to be judged against. It would make no sense whatsoever for an "all relevant respects" analysis to continue after having identified a material difference. This is not a balancing test. Requiring further search for similarities after the identification of a material difference would be like continuing to search for a lost key after it was found – finding a material difference necessarily terminates an *all* relevant respects analysis. As for the suggestion that my analysis is limited to the elements of the crimes in question, I agree that I emphasize the relevance of the elements, but I believe they are essential to guiding the remainder of the analysis. For example, altering the facts of this case would present a meaningful illustration. If, all else being the same, Appellant *had* engaged in an act of sodomy and had nevertheless been charged with child molestation as opposed to aggravated child molestation (and its sentencing exceptions), I believe we would have a different analysis in light of the fact that identical conduct would be present.

to her step-brother, [Appellant], beside her . . . and he had placed his penis in her hand. . . . [Appellant] covered himself up and went back to his room." Under oath, upon questioning from the court, Appellant affirmed the veracity of the State's representations. These facts show that, unlike the comparator group, Appellant did not commit an act of sodomy.

Though the majority discounts this distinction, viewing it as no impediment to the survival of Appellant's equal-protection claim, I cannot follow suit. Not only does the majority's approach ignore the very mandate it prescribes — which requires courts to consider "all relevant respects" when deciding equal-protection claims — but this difference in conduct is the reason Appellant received a different sentence than a defendant convicted of and sentenced for misdemeanor aggravated child molestation based on sodomy. Indeed, when defendants engage in different conduct and, thus, are convicted of different crimes, it should be no surprise that their

45

sentences also might differ.[12] But that difference cannot establish an equal-protection violation. See *Stradford v. Secretary of Pa. Dept. of Corrections*, 53 F4th 67, 74 (III) (A) (3d Cir. 2022) ("Courts must isolate the factor allegedly subject to impermissible discrimination. Other factors explaining disparate treatment will usually preclude persons from being similarly situated." (citations and punctuation omitted)). See also *Griffin v. County School Bd.*, 377 U. S. 218, 230

---

[12] The majority minimizes the importance of this distinction by imagining how Appellant's sentence might have been different if he had committed an act of sodomy by placing his penis on the victim's mouth, rather than an act of molestation by placing his penis in her hand. But what Appellant might have done differently to warrant conviction and sentence for a separate crime serves only to confuse the analysis. We have no way of knowing how Appellant would have accomplished an act of sodomy, and whether he would have done so in a way that would expose him to charges for other crimes. For instance, if Appellant used force to commit the act of sodomy, he could be charged with aggravated sodomy, an offense that carries a much harsher sentence and enjoys no misdemeanor exception for youthful offenders. See OCGA § 16-6-2 (a) (2) and (b) (2). Nor do we know how the prosecutor would have exercised her discretion in indicting Appellant under this imaginary set of circumstances. Indeed, even under the majority's hypothetical, the prosecutor would have discretion to indict Appellant for simple child molestation, as in the instant case. See *Batchelder*, 442 U. S. at 125 ("Just as a defendant has no constitutional right to elect which of two applicable [ ] statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced."). This illustrates the danger of the judicial branch's venturing into the legislative prerogative even where the legislature's choices appear inconsistent or illogical. Accordingly, our analysis must be confined to the facts as they actually stand, and we should take the claimant as we find him.

(84 SCt 1226, 12 LEd2d 256) (1964) ("[S]howing that different persons are treated differently is not enough, without more, to show a denial of equal protection.") (citations omitted)); *Tigner v. Texas*, 310 U. S. 141, 147 (60 SCt 879) (84 LE2d 1124) (1940) ("[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."). Therefore, under the facts of Appellant's case, I would conclude that Appellant is not similarly situated to the comparative group.[13]

(c) My disagreement with the majority extends to its assessment of the rationality of the differences articulated in the statutory scheme. Appellant's actual conduct in this case supported a charge of child molestation, to which he pleaded guilty and for which he was sentenced. If I were to consider my own personal view or the apparent view expressed otherwise in the Georgia Code, I

---

[13] Even if Appellant could prove that he had committed acts which would similarly situate him with defendants who were sentenced under the misdemeanor aggravated child molestation provision, however, Appellant still would not be able to prove that he was singled out for harsher treatment than them, which he must do to succeed on his as-applied challenge. See, e.g., *Engquist*, 553 U. S. at 601; *Batchelder*, 442 U. S. at 124-25 (III) (B); *Rainbow City*, 434 F3d at 1314 (II) (C).

would concede that, in most circumstances, an act of sodomy could be worse and more traumatic to the victim than an act that constitutes simple child molestation. But nothing in the Equal Protection Clause requires the legislature to treat offenders who commit arguably worse crimes more severely,[14] nor does it allow

---

[14] On that point, we should consider the current state of the Georgia Code as it relates to sexual offenses, which is replete with apparent inconsistencies. See, e.g., OCGA § 16-6-3 (c) (statutory rape) ("If the victim is at least 14 but less than 16 years of age and the person convicted of statutory rape is 18 years of age or younger and is no more than four years older than the victim, such person shall be guilty of a misdemeanor."); OCGA § 16-6-5 (c) (enticing a child for indecent purposes) ("If the victim is at least 14 but less than 16 years of age and the person convicted of enticing a child for indecent purposes is 18 years of age or younger and is no more than four years older than the victim, such person shall be guilty of a misdemeanor[.]"); OCGA § 16-6-5.1 (f) (2) (A) & (B) (improper sexual contact by employee, agent, or foster parent) ("If at the time of the offense the victim of the offense is at least 14 years of age but less than 21 years of age and the person is 21 years of age or younger and is no more than 48 months older than the victim, such person shall be guilty of a misdemeanor." However, if the victim "is under the age of 16 and the act physically injures the victim or involves an act of sodomy, the offense shall be punished by imprisonment for not less than 25 nor more than 50 years and a fine not to exceed $100,000.00[.]"); OCGA § 16-6-22.1 (f) (sexual battery) ("When the alleged victim is under the age of 16 years and the conduct is for the purpose of sexual arousal on the part of the alleged offender or alleged victim, consent of the alleged victim shall not be a defense to a prosecution under this Code section; provided, however, that if at the time of the offense the alleged victim is at least 13 but less than 16 years of age and the accused is 18 years of age or younger and no more than 48 months older than the alleged victim, this subsection shall not be applicable."); OCGA § 16-6-22.2 (d) (aggravated sexual battery) ("When the alleged victim is under the age of 16 years and the conduct is for the purpose of sexual arousal on the part of the

courts to supersede legislative judgment about which crimes should result in harsher penalties. See *United States v. Meirick*, 674 F3d 802, 805 (8th Cir. 2012) ("It is within the legislative prerogative to determine, for example, whether child pornography offenses should be punished more or less harshly than sexual offenses involving personal contact with a child . . . . '[R]ational basis' review of sentencing provisions under . . . the Equal Protection Clause must be highly deferential to legislative judgments about the most effective way to protect the public from convicted criminals."); *United States v. Hancock*, 231 F3d 557, 566 (9th Cir. 2000).

To the contrary, where the petitioner is not a member of a suspect class, the legislature's work enjoys a "strong presumption" of rationality, and the petitioner carries the heavy burden "to negate every conceivable basis which might support it." (Punctuation omitted.) *FCC v. Beach Communications*, 508 U.S.

---

alleged offender or alleged victim, consent of the alleged victim shall not be a defense to a prosecution under this Code section; provided, however, that if at the time of the offense the alleged victim is at least 13 but less than 16 years of age and the accused is 18 years of age or younger and no more than 48 months older than the alleged victim, this subsection shall not be applicable.").

307, 314 (II) (113 SCt 2096, 124 LEd2d 211) (1993). The majority inverts that burden — it identifies one sentencing provision that appears facially inconsistent with another, then all but presumes that the identified inconsistency is irrational, simply by virtue of its existence. Rational basis review, however, does not require one provision of a law to be rationally related to another provision; rather, it requires the challenged law to be rationally related to a legitimate government interest. See *Williamson v. Lee Optical of Oklahoma,* 348 U. S. 483, 487-488 (75 SCt 461, 99 LEd 563) (1955) (A "law need not be in every respect logically consistent" to be rational or constitutional.); *United States R. Retirement Bd. v. Fritz*, 449 U. S. 166, 179 (101 SCt 453, 66 LE2d 368) (1980) (The process of legislative line-drawing "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." (punctuation omitted)). Because Appellant built his case by assessing the rational basis for the

differences between the provision under which he was sentenced and a wholly separate provision under which he was not and could not have been sentenced, Appellant, in my view, has not carried his burden.

In any event, there is a rational basis for the difference in treatment. Unless the misdemeanor sentencing exception applies, persons convicted of child molestation are subject to the sentencing and punishment provisions of OCGA § 17-10-6.2, see OCGA § 16-6-4 (b) (1), while persons convicted of aggravated child molestation are subject to the provisions of OCGA § 17-10-6.1, see OCGA § 16-6-4 (d) (1). Under OCGA § 17-10-6.2 (b), a person convicted of child molestation, a "sexual offense," must be sentenced to a "split sentence" which includes the "minimum term of imprisonment" — that is, five years — specified by OCGA § 16-6-4 (b) (1). While OCGA § 17-10-6.2 (b) prohibits a trial court from suspending, staying, probating, deferring, or withholding the mandatory minimum sentence, subsection (c) of the same statute grants the trial court discretion to deviate from that mandatory minimum. Deviation is

51

permitted where "the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum" or where the trial court finds that other circumstances identified in the statute are present, even absent consent of the parties. OCGA § 17-10-6.2 (c) (1). By contrast, under OCGA § 17-10-6.1 (b) (2), a person convicted of aggravated child molestation, a "serious violent felony," must, unless sentenced to serve life in prison, be sentenced to "a split sentence which shall include a mandatory minimum term of imprisonment of 25 years, followed by probation for life." A trial court's discretion to deviate from that mandatory minimum is limited only to circumstances in which "the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum." OCGA § 17-10-6.1 (e).

These statutes reflect that the default sentence for a conviction of aggravated child molestation is much harsher than that for child molestation and that, in cases of aggravated child molestation, a trial court's discretion to fashion a more lenient sentence is greatly circumscribed and may be implemented only with the government's

consent. In light of the significant punishment imposed in cases of aggravated child molestation where sentencing is governed by OCGA § 17-10-6.1, as well as the trial court's circumscribed discretion to reduce such sentences, the legislature had a legitimate interest in crafting a scheme that helps ensure that youthful defendants who engage in acts of sodomy will not be subject to the law's harshest consequences.[15] Broadening the circumstances in which the misdemeanor sentencing provision applies is at least rationally related to that purpose. See *Humphrey v. Wilson*, 282 Ga. 520, 528-529 (3) (a) (652 SE2d 501) (2007) (amendment of OCGA § 16-6-4 to reduce the punishment for sodomy with a 13-, 14-, or 15-

---

[15] The legislature has followed the same approach with other sexual offenses. See, e.g., OCGA § 16-6-3 (b), (c) (person convicted of statutory rape is subject to provisions of OCGA § 17-10-6.2, but misdemeanor sentencing provision applies where victim was at least 14 but less than 16 years old); OCGA § 16-6-5 (b) (c) (person convicted of enticing a child for indecent purposes is subject to provisions of OCGA § 17-10-6.2, but misdemeanor sentencing provision applies where victim was at least 14 but less than 16 years old); OCGA § 16-6-5.2 (person convicted of second-degree improper contact by employee or agent, person in position of trust, or foster parent is subject to provisions of OCGA § 17-10-6.2, but misdemeanor sentencing provision applies where victim was at least 14 but less than 16 years old); OCGA § 16-12-100 (f) (person convicted of sexual exploitation of a child is subject to provisions of OCGA § 17-10-6.2, but misdemeanor sentencing provision applies to specified conduct where victim was at least 14 years old).

year-old child when the defendant is no more than four years older than the victim "appears to be a recognition by our General Assembly that teenagers are engaging in oral sex" and that such "teenagers should not be classified among the worst offenders because they do not have the maturity to appreciate the consequences of irresponsible sexual conduct and are readily subject to peer pressure"). See also *Bunn v. State*, 291 Ga. 183, 191 (2) (b) (728 SE2d 569) (2012) ("[I]n areas subject only to rational basis review, the legislature may address a problem one step at a time, or even select one phase of one field and apply a remedy there, neglecting the others, without violating equal protection." (punctuation omitted)).[16]

(d) For all these reasons, I conclude that Appellant is not

---

[16] The majority complains that I have not "adequately" explained the basis for the discrepancy between the misdemeanor sentencing exceptions for child molestation and aggravated child molestation based on sodomy. Maj. Op. at 27-28 (3) (d). I have not endeavored to explain this discrepancy because the underlying factual basis of Appellant's as-applied challenge reveals that he is not similarly situated with a defendant subject to a charge of aggravated child molestation based on sodomy. The majority certainly takes a different view on that issue; I do not believe, however, that the majority means to suggest that the judiciary is obligated to articulate a rational basis for all legislative schemes that treat differently situated individuals differently.

similarly situated to defendants charged with and convicted of aggravated child molestation and that he has failed to carry his burden of proving that the law under which he was sentenced is not rationally related to a legitimate government purpose. His equal-protection claim should therefore fail,[17] and his sentence is due to be affirmed.[18] Accordingly, I respectfully dissent.

---

[17] Given my conclusion above regarding Appellant's equal-protection claim, I would be obligated to consider his argument that his sentence constitutes cruel and unusual punishment, which, like his equal-protection claim, focuses on the sentencing incongruity between OCGA § 16-6-4 (b) (2) and (d) (2). Setting aside the accuracy of Appellant's understanding of the statute, assuming that he properly preserved this claim for review, and ignoring a possible error in sentencing that is favorable to the Appellant and that the parties have not presented for our consideration, I would reject this claim. See *Jones*, 307 Ga. at 510 (2) (b) (""[W]e do not review a claim of cruel and unusual punishment based upon a sentence a defendant *could* have received; instead, we review the sentence a defendant *did* receive." (emphasis in original)).

[18] While I would affirm the existing sentence, I note my concern with the remedy implemented by the majority, which directs the trial court on remand to resentence Appellant pursuant to OCGA § 16-6-4 (b) (2). That provision, of course, applies only in cases where the victim was "at least 14 but less than 16 years of age" — a factual basis not present in this case. Thus, in order for Appellant to be sentenced under OCGA § 16-6-4 (b) (2), the majority has effectively blue penciled the statute, substituting "13" for "14" for purposes of Appellant's case (and presumably all future cases). My concern with this approach — which proceeds without discussion or citation to authority — arises from the settled notion that this Court is not empowered to rewrite a statute "to conform it to constitutional requirements"; that task is reserved to the General Assembly. *United States v. Stevens*, 559 U. S. 460, 481 (III) (D) (130 SCt 1577, 176 LE2d 435) (2010) ("We will not rewrite a law to conform it

I am authorized to state that Justice LaGrua joins in this dissent.

---

to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain[.]" (citations and punctuation omitted)). See also *Domingue v. Ford Motor Co.*, 314 Ga. 59, 68 (2) (c) n.10 (875 SE2d 720) (2022) ("Under our system of separation of powers this Court does not have the authority to rewrite statutes." (citation and punctuation omitted)). I confess that it is not entirely clear to me why a statute declared unconstitutional as-applied to a defendant can be judicially edited in a manner to preserve its application to that defendant. I raise this concern primarily for the purpose of noting that future cases following this case should include an analysis of the proper remedy in the event of a finding of unconstitutionality.